Frank W. Compagni (A7174)
Bretton L. Crockett (A8573)
MORRISS O'BRYANT COMPAGNI, PC
734 East 200 South
Salt Lake City, Utah 84102
Telephone: (801) 478-0071
Facsimile: (801) 478-0076

*Attorneys for Plaintiff Kindig-it Design, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KINDIG-IT DESIGN, INC., a Utah Corporation,<br><br>   Plaintiff<br><br>vs.<br><br>CREATIVE CONTROLS, INC. a Michigan Corporation, and Does 1-10,<br><br>   Defendants | **MEMORANDUM IN OPPOSITION TO THE MOTION BY DEFENDANT CREATIVE CONTROLS, INC. UNDER RULE 12(B)(2), (3), (6) AND (7) FOR DISMISSAL AND/OR TRANSFER**<br><br>Civil No.:  2:14-cv-00867-RJS<br><br>Honorable:  Robert J. Shelby |

Plaintiff, KINDIG-IT DESIGN, INC., (hereinafter "Kindig'), by and through its undersigned counsel, hereby submits the following Memorandum in Opposition to the Motion by Defendant CREATIVE CONTROLS, INC. (hereinafter "CCI") under Rule 12(B)(2), (3), (6) and (7) for Dismissal and/or Transfer.

# Table of Contents

INTRODUCTION ..................................................................................................................... 5

ANALYSIS ............................................................................................................................. 6

   I. PERSONAL JURISDICTION AND VENUE ................................................................. 6

      CCI's Admitted Activities in Marketing and Selling the Allegedly Infringing
      Products in Utah Provides Specific Personal Jurisdiction. ......................................... 6

      The Admitted Interactive Nature of Defendant's Website With Utah Entities Provides
      Personal Jurisdiction In The Present Case. ............................................................. 11

      Venue Is Proper In Utah ........................................................................................... 13

   II. KINDIG'S COPYRIGHT INFRINGEMENT CLAIMS ARE SUPPORTED BY THE
   ALLEGATIONS IN THE INITIAL COMPLAINT ............................................................ 15

   III. COUNTS 5 THOUGH 10 OF THE INITIAL COMPLAINT ARE SUPPORTED BY
   THE ALLEGATIONS IN THE INITIAL COMPLAINT AND ARE NOT PREEMPTED
   BY 17 U.S. C. § 301 ................................................................................................... 16

   IV. KINDIG'S CLAIM FOR DEFAMATION IS SUPPORTED BY BOTH THE LAW
   AND THE FACTS ....................................................................................................... 19

   V. KINDIG HAS NOT FAILED TO NAME INDISPENSIBLE PARTIES ........................ 20

CONCLUSION ..................................................................................................................... 22

# Table of Authorities

## Cases

*Arguello v. Woodworking Mach. Co.* 838 P.2d 1120, 1122 (Utah 1992) .................................8, 9, 10

*Burt Drilling, Inc. v. Portadrill*, 608 P.2d 244, 246 (Utah 1980) ....................................................9,11

*Conlin Enterprise, Corp. v. SNEWS, LLC*, 032208 UTDC, 2 O7 cv 922 8 (D. Utah 2008)....6, 11, 12

*Hoover Group v Custom Metalcraft*, 84 F3d 1408, (Fed. Cir. 1996)................................................14

*iAccess, Inc. v. WEBcard Technologies, Inc., 182 F. Supp.2d 1183* (Utah 2002) ......................11, 12

*International Shoe v. State of Washington*, 326 U.S 310, 317 (U.S. 1945) ......................................8

*Kimberly-Clark Worldwide Inc. v. First Quality Baby Products, LLC*, 082709 TXNDC, 3:09-CV-

   0488-D (N.D. Tex. 2009)................................................................................................................14

*Lasko v. American Board of Surgery*, 091914 NVDC, 2:13-cv-01893-JAD-NJK

   (D. Nevada 2014) ..........................................................................................................................20

*Mallory Eng'g v. Ted R. Brown & Assoc.*, 618 P.2d 1004,1007 (Utah 1980)....................................8

*Miner v. Rubin & Fiorella*, LLC, 242 FSupp 2d 1043, 1045 (D. Utah 2003) ...................................6

*Parry v. Ernst Home Center*, 779 P.2d 659 at 662 (Utah 1989) .......................................................8

*Soma Medical Int'l v. Standard Chtd. Bank*, 196 F. 3d 1292, 1295 (l0th Cir. Utah 1999) .................7

*Synergetic By and Through Lancer Industries v. Marathon Ranching Co. , Ltd.*, 701 P.2d 1106 at

   1110 (Utah 1985) ............................................................................................................................8

*Systems Designs, Inc. v. New Customware Company, Inc.*, 248 F. Supp.2d 1093, 1101-1102 (D.

   Utah 2003)..............................................................................................................................12, 13

*Valad Elec. Heating Corp. v. Ted R. Brown & Assoc.*, 449 U.S 1029, 101 SCt. 602, 66 L.Ed.2d 492

   (1980) ...............................................................................................................................................8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc*. 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)....................11,12

**Statutes and Rules**

15 U.S.C. § 1125 ................................................................................................................18

17 U.S.C. § 106 .................................................................................................................15

17 U.S.C. § 301 ...........................................................................................................17, 18

17 U.S.C. § 501 ...................................................................................................................7

28 U.S.C. § 1391(c) ......................................................................................................13, 14

28 U.S.C. § 1400(b) ..........................................................................................................14

28 U.S.C. § 1404(a) ..........................................................................................................14

35 U.S.C. § 271 ...................................................................................................................7

F.R.C.P. Rule 12(b)(7) ......................................................................................................21

F.R.C.P. Rule 15(a)(1) ......................................................................................................15

F.R.C.P. Rule 19 ...............................................................................................................21

U.C.A. § 78B-3-205 .......................................................................................................7, 10

U.C.A. § 13-5a-102 ...........................................................................................................18

# INTRODUCTION

Defendant, CCI, has filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue asking the Court to dismiss this action. CCI argues that its contacts with the state of Utah have been insufficient to rise to the level of minimum contacts, as its "level of activity is extremely low." Venue is further argued to be inappropriate based upon this alleged lack of personal jurisdiction. However, an examination of the controlling law demonstrates that specific personal jurisdiction has been established by the facts alleged in the initial Complaint and supported by CCI's own affidavit evidence. Specifically, CCI admits to offering and selling products, including the door handles alleged to infringe Plaintiff's patent rights, within the state of Utah and further admits to the distribution of other products within the State of Utah.

While CCI asserts that its contacts with this forum fail to amount to sufficient minimum contacts to support jurisdiction, it it is clear that the claims set forth in the Amended Complaint arise from CCI's admitted contacts with and conduct in Utah. Moreover, the interactive nature of CCI's website clearly provides for personal jurisdiction over CCI under Utah law. Thus, specific personal jurisdiction over CCI exists and CCI's motion to dismiss should be denied.

CCI also argues that Kindig's non-patent claims should all be dismissed for a variety of reasons, including by disputing the facts alleged in Kindig's Initial Complaint. For instance, CCI states that the individual present at CCI's 2014 SEMA Show trade event booth, who was making sales and selling products, is not its employee or agent and thus, the Court should dismiss these claims. CCI's representation to the Court on this issue, however, is counter to the facts as currently understood and set forth in the Amended Complaint. As explained below, each of CCI's reasons to dismiss the original Complaint are not supported by controlling law and CCI's attempt to dispute the factual allegations in the Initial Complaint at this stage is improper. Because CCI has brought a

12(b)(6) motion to dismiss the claims, Kindig's factual allegations must be presumed true and all inferences therefrom drawn in Kindig's favor. The factual allegations in the Amended Complaint support Kindig's claims under the relevant law, and CCI's motion to dismiss such claims should also be denied.

## ANALYSIS

### I. PERSONAL JURISDICTION AND VENUE

**CCI's Admitted Activities in Marketing and Selling the Allegedly Infringing Products in Utah Provides Specific Personal Jurisdiction.**

Defendant relies on an unpublished case, *Conlin Enterprise, Corp. v. SNEWS, LLC*, 032208 UTDC, 2 O7 cv 922 8 (D. Utah 2008) which it asserts is "controlling law" holding "that personal jurisdiction over a non-resident corporate Defendant only exists where the non-resident defendant purposely establishes minimum contacts with the forum state, the cause of action arises out of those contacts, and that the contacts with the state have been both deliberate and *repeated*. (Memorandum in Support at page 3). However, examination of that case and the controlling case law shows that CCI has overstated the requirement for "repeated" contacts and that under a correct application of the law, CCI's admitted conduct established personal jurisdiction over CCI in this forum.

The 10th Circuit test for whether specific personal jurisdiction exists is: (l) whether the defendant's acts or contacts are described within the parameters of the Utah long-arm statute; (2) whether a 'nexus' exists between the plaintiffs claims and the defendant's acts or contacts; and (3) whether the attainment of personal jurisdiction over the defendant pursuant to the Utah long-arm statute satisfies the requirements of due process. *Miner v. Rubin & Fiorella*, LLC, 242 FSupp 2d 1043, 1045 (D. Utah 2003).

Federal courts follow the relevant state long-arm statute in determining whether a corporation is subject to personal jurisdiction. *Soma Medical Int'l v. Standard Chtd. Bank*, 196 F. 3d 1292, 1295 (l0th Cir. Utah 1999). In Utah, the relevant statute is U.C.A. § 78B-3-205, which sets forth that any person:

> whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of warranty

Among other causes of action, the present case arises under 35 U.S.C. § 271 for infringement of United States Patent 8,544,904 and for infringement of United States Patent 8,894,109.  An element of each of these claims is that CCI has sold, or offered to sell, flush mounted vehicle door handles which are within the scope of these Kindig's patents.  Such acts were expressly pled in the Initial Complaint (at ¶66 and ¶74). CCI has now admitted that it was contacted by a Utah customer, who provided credit card information which it approved, and then it shipped the infringing product to the customer in Utah.  (Declaration of Thomas R. Stowers, at ¶3(e)). CCI has thus admitted to having contracted to supply the allegedly infringing goods in this forum.  CCI has further admitted that on another occasion and pursuant to what CCI alleges was an agreement with Kindig authorizing CCI's use the copyrighted works of Kindig, CCI supplieda specialty parking brake product to Plaintiff in exchange for rights to use Kindig's copyrighted works to promote the parking brake. (Declaration of Thomas R. Stowers at ¶6)   The scope of the alleged agreement between CCI and Kindig is directly at issue in this case and arises out of or relates directly to Kindig's copyright infringement claims under 17 U.S.C. § 501.  Specifically, Kindig's copyright infringement claims include a claim of Copyright Infringement by CCI's Silent Hand

website for unauthorized use of the very Cadillac images that CCI claims it obtained license to use by Kindig. Kindig expressly alleges in the Complaint that CCI has "copied, reproduced, prepared derivative works based on the Works, and/or distributed copies of the Works and/or copyrightable portions thereof to others." (at ¶84 and ¶85). CCI has now admitted it used at least one of the claimed copyrighted works on its Silent Hand website, but that it has permission to do so arising from an alleged agreement with kindig, in exchange for the aforementioned parking brake product. (Declaration of Thomas R. Stowers at ¶6). Because CCI's admitted contacts with the State of Utah are directly related to Kindig's copyright infringement claims against CCI, this Court has specific personal jurisdiction over CCI.

Proper application of the Utah long-arm statute is discussed in *Arguello v. Woodworking Mach. Co*. 838 P.2d 1120, 1122 (Utah 1992), which explains, the minimum contacts must be the basis for the plaintiffs claim and the inquiry focuses on "the relationship of the defendant, the forum, and the litigation to each other." (*Arguello*, 838 P.2d 1123, citing *Parry v. Ernst Home Center*, 779 P.2d 659 at 662 (Utah 1989); *Synergetic By and Through Lancer Industries v. MArathon Ranching Co. , Ltd.*, 701 P.2d 1106 at 1110 (Utah 1985); *Mallory Eng'g v. Ted R. Brown & Assoc.*, 618 P.2d 1004,1007 (Utah 1980), *cert. denied sub nom. Valad Elec. Heating Corp. v. Ted R. Brown & Assoc.*, 449 U.S 1029, 101 SCt. 602, 66 L.Ed.2d 492 (1980) (citing *International Shoe v. State of Washington*, 326 U.S  310, 317 (U.S.). The Utah Supreme Court explained "that **due process is not satisfied by the quantity of the contacts** with the state, but 'rather upon the quality and nature' of the minimum contacts and their relationship to the claim asserted. (*Arguello*, 838 P.2d 1123, citing International Shoe, 326 U.S at 319 (emphasis added). Where the claims at issue "arise" from conduct that constitutes the contact, specific personal jurisdiction will be found.  As

previously discussed, CCI's contacts with Utah are directly related to the causes of action set forth in the original and Amended Complaint.

Similar to the facts in this case, in *Burt Drilling, Inc. v. Portadrill*, 608 P.2d 244, 246 (Utah 1980)[1], a Utah company contacted a California company that supplied drilling rigs and requested a price on a single product. That product, a drilling rig, was then ordered by, and delivered to the Utah company. When that product failed to perform, suit was brought in Utah. The California defendant argued that its single sale in Utah was insufficient to support a finding of personal jurisdiction. Under an earlier and narrower version of the statute at issue here, the court found that:

> the allegations of plaintiffs' complaint show that their claims arise out of defendant's contacts with this State, which were: (1) defendant purposefully contracted with a resident of this State, knowing that it was a resident, and (2) defendant purposefully undertook to supply goods to that resident reasonably knowing or anticipating that those goods would be used in this State. It is clear from the language in the documents, quoted above, that defendant knew the equipment would be used in Utah. Further, the allegations of the complaint are that part of the injury caused by the defective goods was sustained here. (*Burt Drilling* at 608 P.2d at 247).

Here, CCI admits it purposefully contracted with residents of this state, knowing them to be Utah residents, and purposefully supplied goods reasonably knowing or anticipating that those goods would be used in Utah. The claims at issue directly arise from these or are related to these specific actions. Accordingly, CCI has admitted to performing enumerated acts under U.C.A. § 78B-3-205. As CCI reasonably could anticipate that it submitted itself to this jurisdiction to answer for any harm caused at the time it voluntarily undertook the actions constituting its contact with this State, minimum contacts are met and the motion should be dismissed.

---

[1] It is noted that a prior version of the statute was interpreted in *Burt Drilling*. The prior version was narrower in scope in that it limited jurisdiction to claims "arising out of" the enumerated acts, rather than the current version which has been amended to more broadly find jurisdiction lies where the claims "arise out of or are related to" the enumerated acts.

As an alternative to the "arising from" test, courts will examine the forseeability that a defendant's actions would subject them to a suit in Utah. (*Arguello,* 838 P.2d 1123). Here, CCI has admitted it sold the accused smooth handle door product into Utah and that it agreed to and did provide its parking brake product to Kindig, who is located in Utah, and that such agreement is relevant to at least one of Kindig's claims of copyright infringement. (Declaration of Thomas R. Stowers, at ¶3(e) and ¶6). As noted above, U.C.A. § 78B-3-205 enumerates both: (l) the transaction of any business within this state; and (2) contracting to supply services or goods in this state, as acts or contacts submitting a party to personal jurisdiction under the Utah long-arm statute. Thus, the first element of the test is satisfied. As the various infringement claims arise from, or are related to, these specific sales and product supply agreement activities, a clear 'nexus' exists between Kindig's claims and CCI's acts or contacts, therefore satisfying the second part of the test. Finally, under *Arguello*, since the claims arise out of an admitted sale and separate agreement to supply product), the quality of the contacts further supports a finding of personal jurisdiction. Since it was foreseeable that the supplying of products by CCI to Utah residents could subject it to a suit arising from that conduct, the stream of commerce test further supports a finding of specific personal jurisdiction over CCI.

In summary, the Initial Complaint alleges the facts necessary for a finding of specific personal jurisdiction over CCI, and the several causes of action arise out of CCI's actions in offering to sell and selling infringing smooth door handles. CCI's further actions include contracting with Kindig, a Utah company, to supply other products in Utah in exchange for alleged rights to Kindig's copyrighted works, which are now the subject of the present suit. In its supporting declaration, CCI admits its sales and delivery of infringing door handles to at least one Utah resident,. (Declaration of Thomas R. Stowers, at ¶3(e)). These acts give rise to the claims for relief. Further,

10

CCI admits it agreed to and supplied other products Kindig in Utah and argues that the alleged agreement is relevant as a defense to Kindig's copyright infringement claim set forth in the original and now Amended Complaint. (Declaration of Thomas R. Stowers, at ¶6 and CCI's Motion to Dismiss at page 6). Accordingly, the Court should follow the plain language of U.C.A. § 78B-3-205 and the Utah Supreme Court's guidance in *Burt Drilling*, and find specific personal jurisdiction over CCI.

As CCI's lack of venue argument rests on its alleged lack of personal jurisdiction, this argument is also without merit. Here, venue is proper because the acts of patent and copyright infringement occurred in this State, Plaintiff resides in Utah and a substantial portion of the evidence in this case is in Utah. Accordingly CCI's motion to dismiss should be denied.

**The Admitted Interactive Nature of Defendant's Website With Utah Entities Provides Personal Jurisdiction In The Present Case.**

Relying on *Conlin Enterprise, Corp. v. SNEWS, LLC,*, *supra* which cites *iAccess, Inc. v. WEBcard Technologies, Inc.*, 182 F. Supp.2d 1183 (Utah 2002), Defendant argues that, for "general personal jurisdiction to exist, defendant must be conducting substantial and continuous local activity in the forum state," and that "there is no basis for the exercise of personal jurisdiction." This result is reached by characterizing CCI's interactive website with the statement that the present case "clearly falls within the lowest category of the sliding scale set forth in the Zippo Manufacturing case" as "the level of activity is extremely low; i.e. involving a single sale." (Motion to Dismiss, page 4).

While CCI has identified the "sliding scale" analysis with respect to establishing personal jurisdiction based on websites, CCI misrepresents the nature of its own website in order to find itself at the lowest category. Utah courts have adopted the "sliding scale" analysis as set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (see, e.g., *iAccess,*

*Inc*. 182 F. Supp.2d at 1186), to determine whether a website can be the basis for finding personal jurisdiction over a defendant. This "sliding scale" is based upon the following:

> First, personal jurisdiction is established when 'a defendant clearly does business over the Internet', such as entering into contracts which require the 'knowing and repeated transmission of computer files over the Internet.' Second, exercising personal jurisdiction is not appropriate when the Internet use involves 'passive Web site that does little more than make information available to those who are interested in it.' ... Under these circumstances, 'a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.' .... Third, a middle category encompasses 'interactive Web sites where a user can exchange information with the host computer.' ... Whether the exercise of jurisdiction is appropriate depends upon 'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

CCI merely states that the present case "clearly falls within the lowest category of the sliding scale". However, CCI's Silent Hand website allows visitors to directly make a purchase of the infringing door handles therefrom, as can be seen by examining the website (at page 3 of Exhibit H to the Initial Complaint). Under *Zippo* and *iAccess*, CCI's Silent Hand website should thus properly be considered a first category website which is "clearly doing business" in the State of Utah. As stated in *Conlin Enterprise, Corp. v. SNEWS, LLC,*, *supra* "[t]his case is factually distinguishable from *iAccess*, which discussed a middle ground defendant that had an interactive website, but that did not allow users to purchase products."

Defendant argues that because there has been a low volume of sales to Utah, a finding of personal jurisdiction is necessarily precluded. However, whether a purchase has been made and a total volume of such sales is not part of the test. In *Systems Designs, Inc. v. New Customware Company, Inc*., 248 F. Supp.2d 1093, 1101-1102 (D. Utah 2003), this Court noted that a requirement for a sales or transaction is underinclusive. This Court further stated that the degree of targeting of the forum by the website required for personal jurisdiction need not be high and "the

12

mere fact that the targeting was unsuccessful in the sense that no clients in Utah actually chose to contract over the website is not determinative." (Id. at 1102).

The present facts are more directly in line with the logic of *Systems Design*. CCI clearly transacts business through its website which allows visitors to purchase directly from the Silent Hand website the infringing products. Moreover, the infringing copyrighted works of Kindig are displayed on the Silent Hand Website. The fact that Utah residents may represent a small percentage of the total customers is immaterial, as noted in *Systems Design*:

> If [Defendant] did not seek Utah clients it could have used limiting language on its website or removed out-of-state residents from its mailing lists to ensure they did not subject themselves to jurisdiction ....

Accordingly, CCI's website clearly falls within the highest category by allowing purchasing transactions directly through the website and by failing to set any limitations as to where CCI will make sales. Thus CCI's website not only offers the infringing door handle products for sale in Utah, CCI has admittedly sold the infringing door handles into Utah. Accordingly, under the "sliding scale" test, this Court should deny CCI's motion to dismiss for lack of personal jurisdiction.


**Venue Is Proper In Utah**

Jurisdiction and venue, as it relates to corporations, is described in 28 U.S.C. § 139l(c)(2) as follows:

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question

In this regard, if jurisdiction is proper for a corporation, venue will follow. As previously described, CCI is subject to specific personal jurisdiction based on its conduct comprising its

contacts with Utah, specifically its offering for sale, contracting to supply, and supplying infringing

door handles to Utah and for contracting with Kindig for rights to copyrighted works that are now

the subject of the present litigation. Further, personal jurisdiction is also appropriate based on the

highly interactive nature of CCI's website to Utah residents. For each of these reasons, there can be

no doubt that Defendant is subject to personal jurisdiction and that venue is proper in Utah.

CCI further requests that "if the Court finds proper venue, then the case should be

transferred under 28 U.S.C. §1404(a), to the Eastern District of Michigan where CCI resides." This

request is based on the argument that "it will be extremely inconvenient for CCI to litigate in Utah"

and that the "most that Plaintiff might argue in response is that a balance of convenience and

inconvenience is more or less a tie; i.e., to the extent CCI benefits by the transfer of the case to

Michigan, Plaintiff will be equally inconvenienced." Then based on *Hoover Group v Custom*

*Metalcraft*, 84 F3d 1408, (Fed. Cir. 1996), CCI argues that "ties go Defendant" and this case should

be transferred under 28 U.S.C. §1404(a), to the Eastern District of Michigan where CCI resides.

The language in *Hoover* referenced by CCI dealt with whether venue is proper under 28

U.S.C. §§ 1400(b) and 1391(c), not a request to transfer under 28 U.S.C. §1404(a). Contrary to

CCI's argument, a "tie" does not go to a Defendant as explained in *Kimberly-Clark Worldwide Inc.*

*v. First Quality Baby Products, LLC*, 082709 TXNDC, 3:09-CV-0488-D (N.D. Tex. 2009):

> The court cannot transfer a case where the result is merely to shift the inconvenience
> of the venue from one party to the other. *Fowler v. Broussard*, 2001 WL 184237, at
> *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v.*
> *Attock Oil Co.*, 656 F.Supp. 1162, 1167 n. 15 (N.D. Tex. 1987) (Fitzwater, J.)).
> Moreover, "[t]he plaintiff's choice of venue is . . . entitled to deference, and therefore
> the party seeking transfer has the burden to show good cause for the transfer. The
> burden on the movant is "significant," and for a transfer to be granted, the transferee
> venue must be "clearly more convenient than the venue chosen by the plaintiff." *AT*
> *& T Intellectual Prop. I, L.P. v. Airbiquity I*nc., 2009 WL 774350, at *1 (N.D. Tex.
> Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., I*nc.,
> 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II")).

CCI has simply failed to meet its "significant" burden to show good cause for the transfer of venue sufficient to overcome the deference to which Kindig's choice of its home jurisdiction is entitled. Especially where as here CCI has admitted to purposefully availing itself to jurisdiction in Utah by making sales of infringing door handles and other products into Utah that are directly related to the causes of action set forth herein. Accordingly, CCI's request for transfer should be denied.

## II. KINDIG'S COPYRIGHT INFRINGEMENT CLAIMS ARE SUPPORTED BY THE ALLEGATIONS IN THE INITIAL COMPLAINT

On page 6 of CCI's Motion to Dismiss, CCI attempts to summarize Kindig's copyright infringement claims in counts 3 and 4 of the initial Complaint as, "What Plaintiff is saying is that the act of applying for copyright protection on a car photograph prevents a competitor from using photographs of similar or 'nearly identical' cars to promote the sale of his products" and that "[t]his is not the law." CCI goes on to ask "how can a photograph of a car be a 'copy' of another photograph, unless it is totally identical, rather than 'nearly identical?'"

With respect to the copyright claims in the original and now Amended Complaint, Certificates of Registration have issued for each of the copyrights asserted in this case. Each copyright registration has effective registration date of November 17, 2014, prior to commencement of this action. Kindig timely filed a Motion to Amend the Complaint pursuant to FRCP 15(a)(1) on February 13, 2015. This motion was granted by the Court and the Amended Complaint was filed on February 17, 2015. Copies of these Certificates of Registration were attached to the Amended Complaint. Kindig's only changes to the Amended Complaint were to replace reference to Kindig's copyright applications with Certificates of Registration for each of the asserted copyrights.

17 U.S.C. § 106 sets forth the exclusive rights in copyrighted works held by a copyright holder. Subsection (2) specifically states these rights include the right "to prepare derivative works based upon the copyrighted work". As set forth in the Initial Complaint at paragraphs 81, 82, 84, 92, 93, and 95, Kindig alleges that CCI has copied its works directly and/or by the creation of infringing derivative works. It is readily apparent that the "nearly identical" photographs referenced in the Initial Complaint are copies from which Kindig's identifying information (including logos) had been removed to create unauthorized derivative works. Kindig's copyright infringement claims are thus supported in the law and CCI's motion to dismiss should be denied.

With respect to CCI's arguments based on the Stower's Declaration that it has permission to use Kindig's copyrighted works on the Silent Hand website, and that it has no connection to the "owner" of the eBay website, we note that these are factual allegations raised by CCI that are not proper for a motion to dismiss. As CCI's motion is brought under FRCP 12(b)(6), this attempt to dispute the factual allegations in the Initial Complaint at this stage is improper. Kindig's factual allegations are controlling and all inferences must be drawn in Kindig's favor. These factual matters are questions that are appropriate for determination after discovery.[2]

As the copyright infringement claims are supported by the law and the Initial Complaint, CCI's motion to dismiss them should be denied.

### III. COUNTS 5 THOUGH 10 OF THE INITIAL COMPLAINT ARE SUPPORTED BY THE ALLEGATIONS IN THE INITIAL COMPLAINT AND ARE NOT PREEMPTED BY 17 U.S.C. § 301

---

[2] For example, Mr. Stower's Declaration is self-serving and appears to allege that Kindig provided CCI photographs of a car featuring Kindig's own smooth door handles under permission that let CCI use them to promote CCI's directly competing product. Even if such permission were provided, use of photographs of Kindig's installed door handles to advertise CCI's competing handles constitute a basis for Kindig's false advertising claims in the Complaint.

In Section IV(B) of its motion to dismiss, CCI argues that the Kindig's claims for False Advertising under the Lanham Act (15 USC § 1125), Deceptive Trade Practices under the Truth in Advertising Act (U.C.A. 13-11a-3), Unfair Competition under the Unfair Competition Act (U.C.A. 13-5a-102 *et seq.*), Unjust Enrichment, Fraud, and Conversion (collectively, "the several causes of action") should all be dismissed under FRCP 12(b)(B) on three apparent bases. First, that "[t]here is absolutely no basis that the images found anywhere in CCI's website are images of Defendant's products other than those images which were authorized by Plaintiff" or put "another way, the only images of door handles that are apparent or have ever been apparent in Defendant CCI's website and other advertising materials, are photographs of door handles that are actually produced and sold by CCI." (Motion to Dismiss, page 7).

With respect to CCI's arguments, not only is CCI disputing factual allegations in the Initial Complaint, which is improper in a motion under 12(b)(6), it is simply incorrect. Page 1 of Exhibit I to the Initial Complaint is an image of the top page of the silenthand.co website. It includes a side view of the 1964 Cadillac customized by Kindig, which features Kindig's patented door handle product. As noted previously herein, whether CCI had permission to use this photograph in this fashion is at best a question of fact not suitable for resolution under a 12(b)(6) motion. Additionally, even if CCI had permission to use this photograph in some respect, using an image of Kindig's product to advertise CCI's competing door handle product provides a basis for each of these claims. Each of the several causes of action are pled with particularity with respect to the CCI website (*see, e.g.* Initial Complaint ¶¶ 102, 118, 133, 142, 144, 152). Accordingly, CCI's motion should be denied.

CCI further bases its request to dismiss the several causes of action as being preempted by 17 U.S. C. § 301. CCI is again similarly incorrect. 17 U.S. C. § 301(a) sets forth that "all legal or

equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title." 17 U.S. C. § 301(d) sets forth that "[n]othing in this title annuls or limits any rights or remedies under any other Federal statute." Thus, by its own language this statute does not preempt other Federal causes of action, such as Kindig's Fifth Claim for Relief, False Advertising under the Lanham Act (15 USC § 1125).

With respect to counts 6 through 10, 17 U.S. C. § 301(b) sets forth that nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to: "(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106". As noted by CCI, the several causes of action are for Unfair Competition under the Unfair Competition Act (U.C.A. 13-5a-102 *et seq*.), Unjust Enrichment, Fraud, and Conversion, all of which relate to Kindig's allegations that CCI is the "passing off" images of Kindig's products as its own rather than that ownership of a copyrighted artwork is infringed, and each provides its own separate relief. Thus, they are similarly not preempted.

Finally, CCI argues at page 8 of its Motion that:

> It bears pointing out that there is no allegation in the Complaint that the term "Smooth Door Handles" is a trademark; i.e., a designator of origin. To the extent both Plaintiff and Defendant use this term, it is plainly descriptive (if not generic) and ineligible for trademark protection under 15 U.S.C. § 1042(e).

CCI is correct that no such allegation is present, as Kindig has not alleged that it holds trademark rights in this term. However, this is because none of Kindig's claims are based on such an

allegation. Further, the cited statute, 15 U.S.C. § 1042 does not exist. Accordingly, CCI's motion fails on this basis as well.


## IV. KINDIG'S CLAIM FOR DEFAMATION IS SUPPORTED BY BOTH THE LAW AND THE FACTS

In Section IV(C) of its motion to dismiss, CCI argues that the Kindig's claim Common Law Business Disparagement/Defamation should all be dismissed under FRCP 12(b)(B) for two alleged reasons. First, "that expressions of opinion, even derogatory opinions, do not give rise to an action in federal court for defamation", and second, that "the alleged defamer is not an employee of CCI and cannot bind CCI with his statements". (Motion to Dismiss at pages 8-9).

Turning first to CCI's argument that this named individual is "not an employee of CCI", this statement is based entirely on a self-serving Declaration from Thomas Stowers, the President of CCI. Filed herewith is a Declaration from Mark Anthony Zarate, a third party to this action. Mr. Zarate's Declaration states that he was at the 2014 SEMA Show automotive specialty products trade event, when he was contact by Jerry Brock who led Mr. Zarate to CCI's silenthand.co booth. At CCI's booth, Mr. Zarate witnessed Mr. Brock make statements regarding CCI's smooth door handle products and also sell CCI's smooth door handle product to others. (Zarate Declaration ¶¶ 3, 4, 5, 11). Further, Mr. Zarate's Declaration states that Mr. Brock provided a business card identifying himself as Silent Hand's Executive Vice President, which also contained an email address at CCI's domain name (Zarate Declaration ¶ 9). Thus, Mr. Zarate has identified Mr. Brock as being present at CCI's tradeshow both, where Mr. Brock sold CCI's infringing products, and passed out business cards identifying himself as the Executive Vice President of CCI's DBA Silent Hand. Mr. Stower's sworn testimony that Mr. Brock "is not an employee or agent of CCI" (Stowers Declaration ¶ 9) is clearly self-serving and suspect at best. Moreover, Mr. Stowers testimony merely attempts to set forth a disputed fact, which is not a

proper basis for supporting a motion to dismiss under Rule 12(b)(6). Thus, at a minimum there is a question of fact on this issue for which discovery will be required and CCI's 12(b)(6) motion should be denied.

Further, despite CCI's argument that that Mr. Brock is the "alleged defamer", the allegations in the Initial Complaint are not limited to this single incident. (Initial Complaint¶¶ 169, 170). Accordingly, CCI's motion fails on this basis.

Turning to CCI's argument "that expressions of opinion, even derogatory opinions, do not give rise to an action in federal court for defamation." CCI cites *Lasko v. American Board of Surgery*, 091914 NVDC, 2:13-cv-01893-JAD-NJK (D. Nevada 2014) for its support. However, examination of that case shows that it supports denial of CCI's Motion. In this case the court set forth that:

> Generally, "only assertions of fact, not opinion, can be defamatory." But "expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false. To distinguish opinion from fact, Nevada examines whether "a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." This is usually a question of law for the court, but if the statement is ambiguous, it goes to the jury. (foot notes omitted).

Thus, based on the law cited by CCI, it would be inappropriate to dismiss this count under FRCP 12(b)(6) until the record is developed to determine what other statements were made and whether statements are facts or "suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory". Accordingly, CCI's Motion to Dismiss should be denied on this basis as well.

## V. KINDIG HAS NOT FAILED TO NAME INDISPENSIBLE PARTIES

Finally, in Section V of its motion to dismiss, CCI argues that the Kindig's Complaint should be dismissed under FRCP 12(b)(7) as "fatally flawed" for failing to name indispensible

parties. First, CCI argues that the Initial Complaint names "doe" defendants, who are not identified and then uses the plural term "Defendants" in the claims. It then argues that the Initial Complaint "even name[s] Jerry Brock as the person committing the alleged defamation, but Mr. Brock is not named as a party." (Motion to Dismiss, page 9).

With respect to Mr. Brock, it is, and always has been, Kindig's position that Mr. Brock is an agent of CCI, based on the third party provided evidence that he was present at CCI's tradeshow both, where he sold CCI's product, and passed out a business card identifying himself as an Executive Vice President of CCI's DBA Silent Hand. Thus, his actions were binding on CCI.

With respect to the alleged indispensability of the "Doe" defendants, FRCP 12(b)(7) requires a failure to join a party under FRCP Rule 19. FRCP Rule 19(a)(1) sets that a party must be joined if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

In this section of its Motion, CCI has merely argued that the Initial Complaint as drafted "leaves the Court unable to meet a due process requirement as to anyone." (Motion to Dismiss, page 8). There is no explanation of how the Court could not accord complete relief, how the Doe Defendants are impaired from protecting their interests, or how any party could incur inconsistent obligations. Accordingly this should be denied on this basis.

Further, the claims set forth in the Initial Complaint would subject CCI to joint and several liability, and all claims stem from the actions of CCI related to its sales and marketing of the infringing door handle products. Thus, complete relief may be accorded by this Court. Further, the

use of unnamed co-defendants is a common drafting technique, allowing parties to amend pleadings if information is obtained during discovery identifying such parties. Kindig has merely identified the possibility of additional presently unknown defendants that may later be named should such defendants be identified during discovery that are subject to jurisdiction in this Court. As such, CCI's motion should be denied.

## CONCLUSION

In view of the foregoing, Plaintiff respectfully requests that this Court deny the Motion by Defendant CREATIVE CONTROLS, INC. under Rule 12(B)(2), (3), (6) and (7) for Dismissal and/or Transfer in its entirety.

DATED this 20th day of February, 2015.

Respectfully submitted,

MORRISS O'BRYANT COMPAGNI P.C.


  /s/ Frank W. Compagni
Frank W. Compagni