THOMAS N. YOUNG (MI BAR NO. 22656) (*Pro Hac Vice*)
MICHAEL M. JACOB (MI BAR NO. 15391) (*Pro Hac Vice*)
YOUNG BASILE HANLON & MACFARLANE, PC
3001 W. Big Beaver Road, Suite 624
Troy, Michigan 48084
Telephone: (248) 649-3333
Facsimile: (248) 649-3338
young@youngbasile.com
jacob@youngbasile.com

MICHAEL R. MCCARTHY (8850)
SARAH E. JELSEMA (13995)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT 841111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
ecf@parsonsbehle.com
*Attorneys for Defendant Creative Controls, Inc.*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KINDIG-IT DESIGN, INC., a Utah corporation;<br><br>    Plaintiff,<br><br>vs.<br><br>CREATIVE CONTROLS, INC., a Michigan corporation, SPEEDWAY MOTORS, INC., a Nebraska corporation, RUTTER'S ROD SHOP, INC., a North Carolina Corporation, and Does 18.<br><br>    Defendants. | **DEFENDANT CREATIVE CONTROLS, INC.'S MOTION TO DISMISS AND/OR TRANSFER PLAINTIFF'S SUPPLEMENTAL AND SECOND AMENDED COMPLAINT UNDER RULES 12(B)(2), (3), AND (6)**<br><br>Case No. 2:14-cv-00867-RJS<br><br>Judge Robert J. Shelby |

4827-9060-1509.v1

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND.........................................................................................2

ARGUMENT .................................................................................................................3

    A.    This Court Lacks Personal Jurisdiction over Creative Controls ..............................3

        1.    Creative Controls Is Not Subject to General Personal Jurisdiction
Because It Does Not Have Substantial, Continuous, and Systematic
Contacts in Utah...............................................................................................4

        2.    Creative Controls Is Not Subject to Specific Jurisdiction in Utah
Because It Does Not Have Sufficient Minimum Contacts with
Utah and Asserting Jurisdiction Over It Would Offend Traditional
Notions of Fair Play and Substantial Justice.................................................5

    B.    Venue Is Improper As to Creative Controls .........................................................10

    C.    Kindig's Claims against Creative Controls Fail to State Proper Claims. ..............10

        1.    The Court Should Dismiss Kindig's Copyright Claims for Failure
to State a Claim...............................................................................................11

        2.    The Court Should Dismiss Kindig's False Advertising Claim for
Failure to State a Claim...................................................................................15

        3.    The Court Should Dismiss Kindig's Deceptive Trade Practices
Claim under the Truth in Advertising Act for Failure to State a
Claim................................................................................................................17

        4.    The Court Should Dismiss Kindig's Claim under Utah's Unfair
Competition Act for Failure to State a Claim. ...............................................18

        5.    The Court Should Dismiss Kindig's Unjust Enrichment Claim for
Failure to State a Claim...................................................................................19

        6.    The Court Should Dismiss Kindig's Fraud Claim for Failure to
State a Claim. ..................................................................................................20

        7.    The Court Should Dismiss Kindig's Conversion Claim for Failure
to State a Claim...............................................................................................22

        8.    The Court Should Dismiss Kindig's Common Law Business
Disparagement/Defamation Claim as Failing to State a Claim. ................23

CONCLUSION............................................................................................................25

i

Pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (7), Defendant Creative Controls, Inc. ("Creative Controls") moves to dismiss Kindig-It Design, Inc.'s ("Kindig's") Supplemental and Second Amended Complaint (Dkt. No. 26) (the "Complaint"). Kindig's Complaint asserts fourteen claims for relief, alleging patent infringement, copyright infringement, false advertising, deceptive trade practices, unfair competition, unjust enrichment, fraud, conversion, and common law business disparagement/defamation. All of these claims should be dismissed because this Court lacks personal jurisdiction over Creative Controls, and some of the claims should be dismissed as failing to state a claim upon which relief can be granted. If the Complaint is not dismissed, it should be transferred to the Eastern District of Michigan, Southern Division. Should the Court determine that there is personal jurisdiction and that venue is proper in Utah, Creative Controls moves to dismiss each of claims for relief 3 through 11 for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This case involves allegations that Creative Controls is infringing Kindig's trademarks and copyrights, defaming Kindig, and committing a wide variety of other torts against Kindig. The four patent infringement claims relate to Creative Controls' sale of a type of car door handles which it calls Smooth Door Handles. The business disparagement/defamation claim relates to statements allegedly made about Kindig at a trade show last year. The nine copyright and other tort claims relate to photographs or other material that Creative Controls has put on its website and photographs or other material on eBay postings for Creative Controls' Smooth Door Handles products. Each of these nine claims rely upon the same alleged conduct, repackaged to assert

copyright infringement, false advertising, deceptive trade practices, unfair competition, unjust enrichment, fraud, and conversion.

Dismissal is warranted in this case because the Court lacks personal jurisdiction over Creative Controls, and the District of Utah is an improper venue for this dispute.

## FACTUAL BACKGROUND

1.       Creative Controls, Inc. is a company whose primary business is in products to assist handicapped and mobility-impaired persons. Declaration of Thomas R. Stowers (Stowers Decl.) at ¶ 4. Recently, Creative Controls has developed a line of automotive products including door handles and electronic parking brakes for customers and other persons who modify or customize automobiles. *Id.* Creative Controls sells these products under the name "Silent Hand Co." *Id.*

2.       Creative Controls is a Michigan corporation. *Id.* at ¶ 1. Creative Controls has never had and does not now have a regular or established place of business anywhere in the state of Utah. *Id.* at ¶ 3. It is not registered to do business in Utah, and has no employees in Utah. *Id.* Creative Controls owns no property in Utah. *Id.* Creative Controls does not systematically or otherwise target persons or firms as potential customers in the state of Utah for the sale of any products, including but not limited to the door handle products that Kindig alleges infringe its patents. *Id.*

3.       Creative Controls has made only one sale of accused infringing door handles to a person with an address in Syracuse, Utah for a total selling price of $585. *Id.* That sale was made on October 16, 2014 after the purchase contacted Creative Controls. *Id.*

**ARGUMENT**

**A.    This Court Lacks Personal Jurisdiction over Creative Controls.**

Pursuant to Fed. R. Civ. P. 12(b)(2), Creative Controls moves to dismiss Kindig's Amended Complaint for lack of personal jurisdiction. On a motion to dismiss for lack of personal jurisdiction, the plaintiff "carries the burden of establishing personal jurisdiction." *SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1271 (D. Utah 2014). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ." *SelectHealth, Inc.*, 18 F. Supp. 3d at 1271, quoting *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012). Utah's long-arm statute supports asserting "jurisdiction to the fullest extent permitted by the due process clause." *First Mortgage Corp. v. State Street Bank and Trust Co.*, 173 F.Supp.2d 1167, 1173 (D. Utah 2001). "Personal jurisdiction over a nonresident defendant satisfies due process if there are sufficient 'minimum contacts between the defendant and the forum State.'" *Fireman's Fund Ins. Co.*, 703 F.3d at 493, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "The minimum contacts may support specific jurisdiction or general jurisdiction." *Id*. As explained below, Kindig cannot meet its burden to establish that Creative Controls is subject to either general or specific jurisdiction in this Court.

**1. Creative Controls Is Not Subject to General Personal Jurisdiction Because It Does Not Have Substantial, Continuous, and Systematic Contacts in Utah.**

Creative Controls is not subject to general personal jurisdiction in Utah. "General personal jurisdiction permits a court to exercise power over a defendant without regard to the subject of the claim asserted." *iAccess, Inc. v. WEBcard Techs., Inc.*, 182 F. Supp. 2d 1183, 1186 (D. Utah 2002). "For such jurisdiction to exist, the defendant must be conducting substantial and continuous local activity in the forum state." *Id.* A defendant's contacts with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S. A. v. Brown*, ___ U.S. ___, 131 S.Ct. 2846, 2851 (2011).

"[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Monge v. RG Petro-Machinery (Group) Co.*, 701 F.3d 598, 615 (10th Cir. 2012) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1243. Even when a party has shipped some orders into a state, where the volume of business is "insignificant," this "weighs strongly against a finding of jurisdiction." *Caspers Ice Cream, Inc v. Fatboy Cookie Co.*, No. 1:12-CV-133, 2013 WL 2367976, at *3 (D. Utah May 29, 2013).

Creative Controls is not "at home" in Utah. *Goodyear*, 131 S. Ct. at 2851. Creative Controls is a Michigan corporation. Stowers Decl. at ¶ 1. Creative Controls has never had and does not now have a regular or established place of business in Utah. *Id.* at ¶ 3. It is not registered to do business in Utah, and has no employees in Utah. *Id.* Creative Controls owns no property in Utah. *Id.* Creative Controls does not systematically or otherwise target persons or firms as potential customers in the state of Utah for the sale of any products, including but not limited to the door

handle products that Kindig alleges infringe its patents. *Id.* As Creative Controls does not have

substantial, continuous, and systematic contact with Utah, it would be improper for the Court to

assert general jurisdiction over it.

       **2.**     **Creative Controls Is Not Subject to Specific Jurisdiction in Utah Because It Does Not Have Sufficient Minimum Contacts with Utah and Asserting Jurisdiction Over It Would Offend Traditional Notions of Fair Play and Substantial Justice.**

     Where a defendant is not subject to general jurisdiction in a forum, specific jurisdiction

may still exist "solely for lawsuits arising out of particular forum-related activities." *Shrader v.

Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "For specific jurisdiction, the defendant must

have sufficient minimum contacts with the forum state, and jurisdiction over the defendant cannot

offend 'traditional notions of fair play and substantial justice.'" *Fireman's Fund Ins. Co. v.

Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012), quoting *Asahi Metal

Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

       **a.**     <u>Creative Controls Does Not Have Sufficient Minimum Contacts with Utah.</u>

     To have sufficient contacts for specific personal jurisdiction to exist, a defendant must have

"purposefully availed itself of the privilege of conducting activities within the forum State," and

its contacts with the state must "make being sued there foreseeable. . . ." *Fireman's Fund Ins. Co.

v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012). "The litigation must

'result[ ] from alleged injuries that arise out of or relate to those activities.'" *Id.*, quoting *Intercon,

Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). A defendant should

"not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts . . . or [as the result] of the 'unilateral activity of another party or a third person.'" *Burger

*King Corp. v. Rudzewicz*, 471 U.S. 462, 475 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations removed). "[A] court must 'determine whether a nexus exists between the Defendant['s] forum-related contacts and the Plaintiff's cause of action.'" *Monge v. RG Petro-Machinery (Group) Co.*, 701 F.3d 598, 614 (10th Cir. 2012), quoting *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010). "The court must examine the quantity and quality of the contacts." *Monge*, 701 F.3d at 614.

Creative Controls has not had sufficient contacts with Utah that relate to this litigation. The only potentially related contacts are that Creative Controls has a website that can be accessed in Utah, and that Creative Controls has sold one accused product to a customer in Utah. Stowers Decl. at ¶ 3.

The fact that Creative Controls has a website that permits orders to be placed online is not enough. Courts have held that having a website that allows orders to be placed does not subject a party to jurisdiction in every state including Utah, but that rather, a website must specifically target Utah. *See, e.g.*, *Caspers Ice Cream, Inc v. Fatboy Cookie Co.*, 1:12-CV-133, 2013 WL 2367976 at *4 (D. Utah May 29, 2013) ("[The fact that Fatboy Cookie's website allows for interactive orders to be made is not enough to provide Utah jurisdiction over Fatboy Cookie in this case because Fatboy Cookie did not direct its activities toward Utah in any way."); *SIBU, LLC v. Bubbles, Inc.*, No. 2:11-cv-00477 DN, 2011 WL 6028835 at *3 (D. Utah Dec. 5, 2011) (sufficient minimum contacts did not exist where a defendant had a website that allowed orders to be placed online, and there had been 54 sales of products to Utah).

Courts have also held that only one sale in the forum state is not enough to establish specific jurisdiction. For example, in *Bluestone Innovations Texas, L.L.C. v. Formosa Epitaxy Inc.*, 822 F.

6

Supp. 2d 657, 665 (E.D. Tex. 2011), the court found that it did not have jurisdiction over a party who had made one sale to a Texas customer for $1,500. *See also, e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro,* __ U.S. __, 131 S.Ct. 2780, 2787-88, 180 L.Ed.2d 765 (2011) (Breyer, concurring) ("None of our precedents finds that a single isolated sale . . . is sufficient."); *Gro Master, Inc. v. Farmweld, Inc.*, 920 F.Supp.2d 974, 983 (N.D. Iowa 2013) ("[A] single sale of an accused product in Iowa is insufficient contact, particularly when Farmweld made hundreds of sales in another forum (Illinois).").

Moreover, personal jurisdiction may not be manufactured for purposes of the litigation. *See, e.g.*, *Mor–Dall Enters., Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 880 (W.D. Mich. 2014) ("[A] plaintiff may not manufacture jurisdiction by engaging in a sale merely to confer jurisdiction in a particular forum.") (quoting *Dawson v. Pepin*, No. 1:99–CV–316, 2001 WL 822346, at *4 (W.D. Mich. Mar. 29, 2001)); *Krepps v. Reiner*, 588 F.Supp.2d 471, 479 (S.D.N.Y. 2008) ("[P]laintiffs are not permitted to 'manufacture' personal jurisdiction over defendants by orchestrating an in-state web-based purchase of their goods."), *aff'd*, 377 Fed.Appx. 65 (2d Cir. 2010); *Quick Point, Inc. v. Excel Eng'g, Inc.*, No. 4:08CV00797ERW, 2009 WL 330837, at *3 (E.D. Mo. Feb. 9, 2009) ("Personal jurisdiction cannot be based on contacts manufactured by the plaintiff."); *Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 112 (D. Conn. 1998) ("Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes."). Here, the sale was made to Utah only a little over a month before the Kindig filed a complaint against Creative Controls on November 25, 2014. Dkt. No. 2. Kindig has not alleged that the sale was not made by one of their employees, agents, or representatives.

Further, to the extent Kindig argues its presence in Utah helps establish Creative Controls' personal jurisdiction here, Kindig's argument fails. Indeed, "personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state." *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) (citing *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1122-26, 188 L.Ed.2d 12 (2014)). The analysis of whether a court has personal jurisdiction over a defendant "cannot be driven by 'a plaintiff's contacts with the defendant and forum.'" *Rockwood Select Asset Fund XI,* 750 F.3d at 1180, quoting *Walden,* 134 S.Ct. at 1125.

The alleged "defamatory statements" also do not support a finding of personal jurisdiction. In *Shrader v. Biddinger*, 633 F.3d 1235, 1245-46 (10th Cir. 2011), Oklahoma did not have personal jurisdiction over a defendant accused of posting a defamatory statement regarding an Oklahoma resident online where the content of the statement was not about Oklahoma, the statement was not made in a forum related to Oklahoma, and there was "no basis for concluding that [the defendant] targeted his post at Oklahoma." Here, the content of the allegedly defamatory statements was not about Utah, the statements are not alleged to have been made in Utah, and there is no indication that they were "targeted" at Utah or even said to persons who had any connection to Utah.

        b.    Exercising Jurisdiction over Creative Controls Would Offend Traditional Notions of Fair Play and Substantial Justice.

Even if Kindig could show that Creative Controls had sufficient minimum contacts with Utah, which it cannot, Kindig would also need to show that exercising jurisdiction over it would not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The relevant factors include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the

8

plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (internal quotations removed).

It would be a significant burden on Creative Controls to have to defend this lawsuit in Utah while Creative Controls is located in Michigan. Utah has no particular interest in adjudicating the dispute, as most or all of the alleged infringement occurred elsewhere, and the alleged defamation occurred in Nevada. As patent litigation discovery focuses on the activity of the defendant and whether that activity is allegedly infringing, the center of gravity of discovery in this matter will be in Michigan. Therefore, it will be more efficient for this lawsuit to occur in Michigan.

Further, federal law applies to the patent and copyright claims, and most or all of Kindig's state law claims should be dismissed. Michigan law should be applied to any of Kindig's state law claims (other than defamation) that are not dismissed. Under Utah's conflict of laws principles, the law of the state with "the most significant relationship to the occurrence and the parties" is to be applied. *Williams v. Jeffs*, 57 P.3d 232, 235, 2002 UT App 232, ¶ 13 (Utah App. 2002). The factors to be considered include the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, place of incorporation, and place of business of the parties, and the place where the relationship, if any, between the parties is centered. *Id.* Of these, the most significant factor here is the place where the conduct causing the injury allegedly occurred, which—with the exception of the business disparagement/defamation claim—is

9

Michigan. Based on a similar analysis, it appears that the business disparagement/defamation claim should be decided under Nevada law. Accordingly, the burden on the defendant, the lack of a connection to Utah, and the judicial system's interest in obtaining the most efficient resolution of controversies all point to Michigan as the most appropriate forum for this dispute.

**B.**     **Venue Is Improper As to Creative Controls.**

Venue in this case is based on 28 USC § 1391 and 1400. For the same reasons that personal jurisdiction against Creative Controls is lacking, venue is also improper. As Creative Controls lacks any kind of presence in Utah, it will be extremely inconvenient for Creative Controls to litigate in Utah. The Court should exercise its discretion and transfer the case to the Eastern District of Michigan, where Creative Controls resides, pursuant 28 U.S.C. § 1404, which permits such a transfer "[f]or the convenience of parties and witnesses, in the interest of justice."

Many of the witnesses and much of the evidence relating to Kindig's alleged acts is located in Michigan, where the allegedly infringing products are made. The Eastern District of Michigan is also much closer to North Carolina, where Defendant Rutter's Speed Shop is located, and slightly closer to where Defendant Speedway Motors, Inc. is in Lincoln, Nebraska than the Utah District Court is. Therefore, it seems that Michigan would be a more convenient forum for all three defendants than Utah. While Creative Controls acknowledges that litigating in Michigan will likely be less convenient for Plaintiff, venue laws are established for the protection of defendants, not for the benefit of plaintiffs. *Hoover Group v Custom Metalcraft*, 84 F3d 1408, 1411 (Fed. Cir. 1996).

**C.**     **Kindig's Claims against Creative Controls Fail to State Proper Claims.**

Pursuant to Fed. R. Civ. P. 12(b)(6), Creative Controls moves to dismiss certain of the claims asserted against it in Kindig's Complaint because they fail to state a claim upon which relief

can be granted.[1] A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### 1. The Court Should Dismiss Kindig's Copyright Claims for Failure to State a Claim.

Kindig's copyright infringement claims (claims for relief 3 and 4) should be dismissed for failure to state a claim because they lack the necessary requirements for alleging copyright infringement. To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, 12-cv-02240-PAB-DW, 2013 WL 1229534 at *2 (D. Col. Aug. 12, 2013) (quoting *Blehm v. Jacobs,* 702 F.3d 1193, 1199 (10th Cir. 2012)).

Kindig's allegations with regard to its copyright registration ownership are lacking in several respects. First, Kindig has not identified the specific photograph(s) (or other works) in which Creative Controls is allegedly infringing the copyright. For example, Kindig alleges in Claim 3 that Creative Controls has copied "Plaintiff's copyrighted Works and/or copyrighted portions thereof." Dkt. No. 26 at ¶ 111. Kindig has only identified these works by providing their

---

[1] Creative Controls is entitled to dismissal based on lack of personal jurisdiction, but it also asserts this motion to dismiss for failure to state a claim under 12(b)(6) so as not to waive it under Rule 12(g)(2). *See, e.g.*, *Albers v. Board of County Comm'rs of Jefferson County*, 771 F.3d 697, 701-04 (10th Cir. 2014) (discussing but not deciding whether Rule 12(g)(2) applies to successive motions for failure to state a claim).

copyright registration certificates and the information on those certificates. Dkt. No. 26 at ¶¶ 16-

25. Merely identifying copyright registrations does not suffice:

> To be sufficient under Rule 8 a claim of infringement must state,
> Inter alia, which specific original work is the subject of the copyright
> claim, that plaintiff owns the copyright, that the work in question
> has been registered in compliance with the statute and by what acts
> and during what time defendant has infringed the copyright. [2a
> Moore's Federal Practice P 8.17(7) at 1766 (2d ed. 1978)] at 1767.

*Gee v. CBS, Inc.*, 471 F. Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, *Gee v. CBS, Inc.*, 612 F.2d 572

(3rd Cir. 1979). *See also, e.g.*, *Levey v. Brownstone Investment Group, LLC*, Civil Action 11-395

(ES), 2013 WL 3285057 at *5 (D. N.J. June 26, 2013) (quoting *Gee*); *Hartman v. Hallmark Cards,

Inc.*, 639 F. Supp. 816, 820 (W.D. Mo. 1986) (same); *John Wiley & Sons, Inc. v. Golden*, No. 14-

942 (AET) (D. N.J. Feb. 19, 2015), 2015 WL 716880 at *1 (finding that a copyright infringement

claim was sufficiently pleaded where exhibits to the complaint listed both all of the allegedly

infringed books and "the applicable copyright registration numbers for all of the known alleged

pirated books," among other things). The Federal Rules of Civil Procedures provide a sample form

of complaint for copyright infringement, and the form anticipates that the allegedly infringing

work would be not only be identified in the complaint, but also attached as an exhibit. Fed. R. Civ.

P. Forms 19.

    It appears from the Complaint that the copyright registrations may relate to photographs of

cars. However, if that is the case, Kindig has not identified which specific photographs are

allegedly infringed. Based on their registrations, all of the asserted Copyright Registrations—

"www.kindigit.com (October 2014)", "Hess Camaro Photo Gallery", "Blue Truck and Unfinished

Door Photo", and "1965 Chevy Photo Gallery"—appear to be group registrations of multiple

works. Further, some of the copyright registrations refer to two dimensional artwork and text. The

work entitled www.kindigit.com (Exhibit C) may be Kindig's entire website, but Kindig has not stated what portions of the website are allegedly being infringed. The Complaint does not sufficiently state what Creative Controls allegedly infringes by merely reciting the titles given to the registrations.

In addition to not having identified what specifically is being allegedly infringed, Kindig has not identified what works on Creative Controls' website and/or the eBay pages are allegedly infringing Kindig's works. Instead, the Complaint just cites the website and the eBay pages generally, without identifying what artwork, photographs, text, or other material on the website or pages is allegedly infringing. (*See, e.g.*, Dkt. No. 26 at ¶¶ 114-115, "On information and belief, Defendant CCI has copied, reproduced, prepared derivative works based on the Works, and/or distributed copies of the Works and/or copyrightable portions thereof to others. CCI has infringed the copyrights in the Works by posting their website which includes subject matter that infringes one or both of the Works and/or copyrightable portions thereof.")

This fails "to give defendants fair notice of the claims against them and the grounds supporting the claims." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947, 85 Fed.R.Serv.3d 1317 (7th Cir. 2013). *See, e.g.*, *Hartman v. Hallmark Cards, Inc.*, 639 F. Supp. 816, 820 (W.D. Mo. 1986) (where a plaintiff had alleged that a much broader list of products were infringing than could possibly have infringed plaintiff's copyright, the court held that "[t]his type of broad, sweeping allegation of infringement does not comply with Rule 8's requirement that specific mention of those acts which infringe are necessary in order to assert a cause of action and are required so that the defendant can adequately respond.") Certainly Creative Controls' *entire website* does not infringe Kindig's copyrights.

13

Further, at least some of the registrations may be invalid on their face, but this is difficult if not impossible for Creative Controls to determine since Kindig has not identified what the works actually are. For example, the "Blue Truck and Unfinished Door Photo" registration is attached to the Complaint as Exhibit F. The registration indicates that the "work" had three authors, Kindig-It Design, Inc. (author of text and photograph(s), Thomas Arthur Willman (author of photograph(s)), and David R. Kindig (author of 2-D artwork). It is unclear what the photographs, text, and two-dimensional artwork referred to in the registration are. The registration indicates that the work was a work for hire with regard to Kindig-It Design, Inc., and that it was not a work for hire with regard to David R. Kindig and Thomas Arthur Willman. On its face, it appears that it may be an invalid copyright registration. As both Thomas Arthur Willman and Kindig-It Design, Inc. were listed as authors of the photographs, apparently this registration was a group registration of photographs.[2] However, under 37 CFR 202.3(b)(10)(ii), for group registrations of photographs, "[t]he photographer who photographed each of the photographs submitted for registration as part of the group must be the same person." Here, however, it appears that some of the photographs in the collection were taken by Thomas Arthur Willman not pursuant to any work-for-hire arrangement, and that others were taken by an unknown individual on behalf of Kindig pursuant to a work-for-hire agreement. Other registrations have similar issues. For example, the registrations in Exhibits D and E include both 2-D artwork and photographs.

---

[2] "If a work is made for hire, an employer is considered the author even if an employee actually created the work. The employer can be a firm, an organization, or an individual." Works Made For Hire, U.S. Copyright Office, Circular 09, at p. 1, available online at http://copyright.gov/circs/circ09.pdf.

The allegations regarding the Exhibit J eBay posting by Seller "gameoverlounge" should be dismissed as not resulting from the actions of Creative Controls. The owner of this eBay website is unconnected to Creative Controls and unknown to Mr. Stowers. Stowers Decl. ¶ 7. Kindig has mistakenly assumed that a website offering defendant Creative Controls' product for sale originated with Creative Controls.

For these reasons, claims for relief 3 and 4 should be dismissed under Rule 12(b)(6).

> **2.    The Court Should Dismiss Kindig's False Advertising Claim for Failure to State a Claim.**

Kindig's false advertising claim (claim 5) should be dismissed as failing to state a claim. The claim alleges that "CCI has included images and information on at least its Silent Hand website and SH eBay Page that are false and/or misleading." Dkt. No. 26 at ¶ 132. "CCI has used images depicting Plaintiff's product in connection with false and misleading statements to create the impression that such images are of Defendant's competing product." *Id.* at ¶ 133. These allegations are insufficient to assert a claim of false advertising under the Lanham Act:

> In order to survive a motion to dismiss, a party bringing a claim under Section 1125(a)(1) must plead facts sufficient to show that
>
> (1)    defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;
>
> (2)    the misrepresentation is material, in that it is likely to influence the purchasing decision;
>
> (3)    the misrepresentation actually deceives or has the tendency to deceive a substantial segment of the audience;
>
> (4)    the defendant placed the false or misleading statement in interstate commerce; and

15

> (5)     plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Gates Corp. v. Dorman Prods., Inc.*, No. 09-CV-02058 CMA-KLM, 2009 WL 5126556, at *3 (D. Colo. Dec. 18, 2009), citing *Zoller Labs., LLC v. NBTY, Inc.,* 111 Fed. Appx. 978, 982 (10th Cir. 2004).

Even assuming for the sake of argument that the photographs of cars that Kindig alleges show Kindig's door handles instead of Creative Controls' door handles (whatever photographs those are), this would not be a "false or misleading description of fact or representation of fact." The door handles in the photographs of the cars are very small, and it is very difficult, if not impossible, to see what the door handles in many of the photographs look like. It is hard for an observer to tell whether the handles are Kindig door handles, Creative Controls door handles, the original handles that came on cars, or another type of handles. In order for the appearance of the door handles in the photographs to be "false and misleading" as to what Creative Controls' door handles actually look like, the door handles in the pictures would need to actually visible in a meaningful way. Kindig has not alleged that any difference in the appearance of its door handles from Creative Controls' door handles, so it seems unlikely that showing a small photograph of a very similar if not indistinguishable product would be *materially* misleading as to what the appearance of Creative Controls' door handles is.

Further, with a large photograph of a Creative Controls door handle visible in the eBay page, for example, it is unlikely that any differences between door handles in the small photographs of cars and the actual Creative Controls door handles would influence any purchasing decision, as certainly a purchaser would know to rely upon the large close-up shot for what the product looks

16

like. Finally, Kindig has not alleged that Creative Controls' use of such photographs of cars would "directly divert" sales from Kindig, or that it would "lessen the goodwill associated with [Kindig's] products." Creative Controls' products are very clearly advertised as being sold by Silent Hand, the name under which Creative Controls sells these products—not Kindig.

### 3. The Court Should Dismiss Kindig's Deceptive Trade Practices Claim under the Truth in Advertising Act for Failure to State a Claim.

Kindig fails to state a claim for relief under the Utah Truth in Advertising Act, Utah Code § 13-11a-1 (claim 6). Kindig has not alleged which specific enumerated deceptive trade practice Creative Controls has participated in. Utah Code § 13-11a-3. For example, section (a) lists "cause[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services." *Robert J. DeBry and Associates, P.C. v. Qwest Dex, Inc.*, 144 P.3d 1079, 2006 UT 41, ¶ 12 (Utah 2006). Without knowing which specific enumerated deceptive trade practice Kindig is asserting, it is hard for Creative Controls to respond to this allegation.

However, assuming for the sake of argument that Kindig is asserting section (a), for example, this claim fails for similar reasons that Kindig's false advertising claim fails. Kindig merely alleges that Creative Controls "has used images depicting Plaintiff's [door handle] product in connection with false and misleading statements to create the impression that such images are of CCI's competing product." For this to result in a likelihood of confusion as to the "source" of Creative Controls' advertised handles, for example, this would require that someone seeing the photographs of the cars having handles would recognizes the handles as have been made by Kindig. Even if Kindig knows that the photographs showed Kindig's door handles, it is difficult for others to determine what type of door handles are on the vehicles, as they are very small. A

17

viewer of the website may just as likely think that the photographs are showing original handles. It is not unusual to display photographs of cars in advertising various car parts or accessories, even if those exact auto parts have not specifically been installed in the photographed car.

Or, if Kindig's argument is that people will see the photographs and assume that Creative Controls necessarily made the door handles in all of the pictures and by doing so those people will somehow be harmed, again, this seems unlikely. The photographs in Creative Controls' advertisements are mostly just photographs of automobiles manufactured by third parties, such as General Motors. Many are too small to even show any indication of what the door handle looks like. As on the eBay posting at Exhibit J, where an advertisement includes a large, close-up photograph of what the handle being sold actually looks like, even showing photographs of cars having doors having different, non-Creative Controls' door handles cannot cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods being sold—which are Creative Controls' products.

As it is unclear what type of deceptive trade practices Kindig is asserting, and, as Kindig has not sufficiently alleged how Creative Controls has, for example, "caused [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services", Utah Code § 13-11a-3(a), this claim should be dismissed.

### 4. The Court Should Dismiss Kindig's Claim under Utah's Unfair Competition Act for Failure to State a Claim.

Kindig fails to state a claim under the Utah Unfair Competition Act (claim 7). Under the Utah Unfair Competition Act, Utah Code § 13-5a-101 *et seq.*, "unfair competition" is defined as an "intentional business act or practice" that is "is unlawful, unfair, or fraudulent" *and* "leads to a material diminution in value of intellectual property" *and* is one of the following:

18

(A)     malicious cyber activity;

(B)     infringement of a patent, trademark, or trade name;

(C)     a software license violation; or

(D)     predatory hiring practices.

Utah Code § 13-5a-102.

Kindig's Complaint fails to state a claim under this statute. Kindig asserts that, by allegedly using images of Kindig's products and allegedly passing them off as Creative Controls' products, Creative Controls has done something that is "unlawful, unfair, or fraudulent." Dkt. No. 26 at ¶ 163-166. However, even if that were true, this alleged passing-off does not fall under any of the four enumerated categories included in the statute, such as malicious cyber activity or patent infringement.

Moreover, Kindig's naked assertion that Creative Controls' conduct has "damaged, and will continue to damage, the value of Plaintiff's intellectual property" (Dkt. No. 26 at ¶ 166) is an independent ground for dismissing this claim as failing to state a claim. *See, e.g.*, *Rich Media Club, LLC v. Mentchoukov*, 2:11-CV-1202 TS, 2012 WL 1119505 at *4 (D. Utah Apr. 3, 2012) (dismissing an unfair competition act claim as insufficient based on the "naked assertion" that "Defendants' conduct as alleged herein has, upon information and belief, led to a material diminution in the value of [Plaintiff's] intellectual property").

### 5.     The Court Should Dismiss Kindig's Unjust Enrichment Claim for Failure to State a Claim.

Kindig's unjust enrichment claim (claim 8) should be dismissed as preempted by federal copyright law. Kindig's allegations with regard to its unjust enrichment claim focus on the alleged benefit that Creative Controls received by allegedly using Kindig's copyrighted works. Dtk. No.

26 at ¶¶ 173-176. (For example, paragraph 175 recites "[u]pon information and belief, CCI has saved significant resources in providing the Works or copyrighted portions thereof to its customers by infringing Plaintiff's copyright rather than creating its own non-infringing content.")

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright." 17 U.S.C. 301(a). "Under section 301, a state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. Secs. 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. Sec. 106." *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985). In *Ehat*, the 10th Circuit affirmed the dismissal of a state law unjust enrichment claim as preempted by federal copyright law.

"Section 106 of the Copyright Act grants to the copyright owner the exclusive rights to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1543 (10th Cir. 1996). Here, Kindig claims that Creative Controls was unjustly enriched because it allegedly reproduced Kindig's copyrighted materials and publicly displayed them. Therefore, the claim must be dismissed as preempted.

### 6. The Court Should Dismiss Kindig's Fraud Claim for Failure to State a Claim.

Kindig's fraud claim (claim 9) should also be dismissed. The fraud claim alleges that Creative Controls has "included false and/or misleading information on the Silent Hand Website" and on the Silent Hand eBay page. Dkt. No. 26 at ¶ 182-183. Kindig alleges that Creative Controls

made misleading statements "with intent to deceive or mislead the public." *Id.* at ¶ 185. However, this fails to state a claim for fraud.

The elements of a fraud claim are as follows:

> A claim of fraud requires the plaintiff to allege: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage."

*Fidelity Nat'l Title Ins. Co. v. Worthington*, 344 P.3d 156, 159, 2015 UT App. 19, ¶ 10 (Utah App. 2015) (quoting *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App. 321, ¶ 16, 290 P.3d 930). Utah Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "[T]he mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement." *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40, 2003 UT 14, ¶ 16 (Utah 2003).

Here, Kindig has not even recited the elements of a fraud claim, let alone pled them with particularity. Specifically, Kindig has not identified what false representation concerning a presently existing material fact Creative Controls has made. Instead, it merely states that Creative Controls has disseminated "false and/or misleading information." Kindig has further not alleged that any such representation was made for the purpose of inducing Kindig to act upon it. Kindig has not alleged that it reasonably and in ignorance of the falsity of the representation acted upon or relied upon the representation. Kindig has also not asserted that any such representation induced Kindig to act to its injury and damage.

21

**7.     The Court Should Dismiss Kindig's Conversion Claim for Failure to State a Claim.**

Kindig's conversion claim (claim 10) alleges that Creative Controls "wilfully misappropriated" Kindig's copyrighted works, unjustifiably "retain[ed] copies" of Kindig's copyright works, and that it "converted" Kindig's copyrighted works for its own use. Dkt. No. 26 at ¶ 190-192.

"A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Bonnie & Hyde, Inc. v. Lynch*, 305 P.3d 196, 2013 UT App 153 (Utah App. 2013) (quoting *Fibro Trust, Inc. v. Brahman Fin., Inc.,* 1999 UT 13, ¶ 20, 974 P.2d 288 (Utah 1999)); *see also Allred v. Hinkley*, 328 P.2d 726, 728, 8 Utah 2d 73, 76 (Utah 1958) (same). "The gravamen of the tort of conversion is the *deprivation* of the possession or use of one's property." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 304 (7th Cir. 1990) (emphasis original). "[T]he possession of copies of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion." *Id.* at 303. Here, assuming that Kindig's allegations are true, Kindig has not alleged that Creative Controls' use of Kindig's copyrighted works deprived Kindig of its ability to use the works. Accordingly, Kindig's conversion claim fails.

Kindig's conversion claim appears to also fail to state a claim because it is preempted by the federal Copyright Act. As discussed above with regard to Kindig's unjust enrichment claim, the Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright."

17 U.S.C. 301(a). These allegations are equivalent to the rights within the scope of the Copyright Act and within the subject matter of copyright.

Similar to the plaintiff in *Ehat v. Tanner*, 780 F.2d 876 (10th Cir. 1985), Kindig is not seeking to recover for having been physically deprived of its copyrighted works, but instead seeks to "recover for damage flowing from their reproduction and distribution." *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985). The court in that case explained that a party could not escape preemption by trying to couch such a claim in terms of physical appropriation:

> In an effort to distinguish this case from a preempted claim, the district court granted Ehat relief based on its finding that, by printing and selling Ehat's notes, the Tanners "bodily appropriated the work product of plaintiff" and derived a profit from their misappropriation. . . . Assuming that [such a claim states a claim for relief under Utah law], we see no distinction between such a state right and those exclusive rights encompassed by the federal copyright laws. . . . Ehat did not allege a state law claim of conversion to recover for the physical deprivation of his notes. Instead, he sought to recover for damage flowing from their reproduction and distribution."

*Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985).

To the extent that the conversion claim seeks to protect intangible intellectual property, it is unlikely that "Utah would [] allow a conversion claim for intangible intellectual property." *Margae, Inc. v. Clear Link Technologies, LLC*, 620 F.Supp.2d 1284, 1287 (D. Utah 2009). For all of these independent reasons, this conversion claim should be dismissed as failing to state a claim.

### 8.   The Court Should Dismiss Kindig's Common Law Business Disparagement/Defamation Claim as Failing to State a Claim.

Kindig's common law business disparagement/defamation claim (claim 11) should be dismissed as failing to state either claim. Kindig alleges that Mr. Jerry Brock told people that that Kindig's door handle products were "junk," and that Kindig "was raping people" by selling its

door handle products. Dkt. No. 26 at ¶ 60. "The elements required to prove a cause of action for business disparagement differ from the elements required to prove classic defamation and, necessarily, per se." *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.,* 213 P.3d 496, 504 (Nev. 2009). The fact that Kindig has only generally asserted "business disparagement/defamation," supports the argument that it has not adequately pleaded either cause of action, but, nonetheless, this motion to dismiss explains why each allegedly defamatory statement fails to state a claim under either cause of action.[3]

First, the "junk" statement cannot support a claim for defamation, but instead can only be asserted as a business disparagement claim. "[I]f the statement is directed towards the quality of the individual's product or services, the claim is one for business disparagement." *Clark County. Sch. Dist.,* 213 P.3d at 504. Kindig has not properly pleaded business disparagement with regard to the "junk" claim. "To succeed in a claim for business disparagement, the plaintiff must prove: (1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages." *Id.* Kindig has not alleged anything in support of special damages, for example.

Second, the "raping people" statement cannot support a claim for business disparagement, and could only be theoretically used to support a defamation claim. "[I]f a statement accuses an individual of personal misconduct in his or her business or attacks the individual's business reputation, the claim may be one for defamation per se. . . ." *Clark County Sch. Dist.,* 213 P.3d at 504. Assuming for the sake of argument that Mr. Brock's "raping people" statement can be

---

[3] Creative Controls disputes that Mr. Brock was an employee of Creative Controls. Stowers Decl. at ¶ 9. However, whether or not he was an employee of Creative Controls, Kindig's claims fail.

24

attributed to Creative Controls, the allegedly defamatory statement would still fail to state a claim as it is a statement of opinion rather than a statement of fact. "Generally, 'only assertions of fact, not opinion, can be defamatory.'" *Lasko v. Am. Bd. of Surgery*, 47 F. Supp. 3d 1122, 1138 (D. Nev. 2014) *order vacated in part on reconsideration sub nom. Lasko v. Am. Bd. of Internal Med.*, No. 2:13-CV-1893-JAD-NJK, 2015 WL 1268032 (D. Nev. Mar. 19, 2015) *reconsideration denied*, No. 2:13-CV-1893-JAD-NJK, 2015 WL 1600695 (D. Nev. Apr. 8, 2015); *see also, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1, 58 U.S.L.W. 4846 (1990) ("statements that cannot reasonably be interpreted as stating actual facts about an individual are protected . . . ."); *see also Moonin v. State of Nevada*, 960 F. Supp. 2d 1130; 1143-45 (D. Nev. 2013) (statements that a reasonable person would interpret as rhetorical hyperbole are not actionable in defamation); *Wellman, et al. v. Fox, et al*., 825 P.2d 208, 210 (Nev. 1992) ("exaggerated statements are permissible in contexts in which the statements would be interpreted by a reasonable person as mere rhetorical hyperbole"). Here, it is clear that rather than being a statement of fact, such an assertion regarding "raping people" by selling products is a vulgar way of expressing the opinion that Kindig overcharges people for its products. Reasonable people would interpret such a statement as rhetorical hyperbole.

For all these reasons, Plaintiff's business disparagement/defamation claim should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Creative Controls asks this Court to find that it lacks personal jurisdiction over Utah. A single sale in Utah and a website that does not target Utah should not subject a party to personal jurisdiction in Utah. However, if the court finds that it has jurisdiction

and that venue is proper but inconvenient, than the case should be transferred to the Eastern District of Michigan, Southern Division, where Creative Controls can be sued. In addition, Kindig's copyright infringement, false advertising, deceptive trade practices, unfair competition, unjust enrichment, fraud, conversion, and common law business disparagement/defamation claims all fail to state a claim.

Dated: July 17, 2015.

Respectfully submitted,

*/s/ Michael R. McCarthy*

THOMAS N. YOUNG
MICHAEL M. JACOB
YOUNG BASILE HANLON & MACFARLANE, PC

MICHAEL R. MCCARTHY
SARAH E. JELSEMA
PARSONS BEHLE & LATIMER
*Attorneys for Defendant Creative Controls, Inc.*

26

**CERTIFICATE OF SERVICE**

On this 17th day of July 2015, I certify that I electronically filed the foregoing **DEFENDANT CREATIVE CONTROLS, INC.'S MOTION TO DISMISS PLAINTIFF'S SUPPLEMENTAL AND SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system that will send an electronic notification to counsel of record for all of the parties.

*/s/ Michael R. McCarthy*
MICHAEL R. MCCARTHY

27

4827-9060-1509.v1