FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KINDIG IT DESIGN, INC., a Utah corporation,<br><br>     Plaintiff,<br><br>v.<br><br>CREATIVE CONTROLS, INC., a Michigan corporation, SPEEDWAY MOTORS, INC., a Nebraska corporation, RUTTER'S ROD SHOP, INC., a North Carolina Corporation, and Does 1-18,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT CREATIVE CONTROLS, INC.'S MOTION TO DISMISS AND/OR TRANSFER PLAINTIFF'S SUPPLEMENTAL AND SECOND AMENDED COMPLAINT UNDER RULES 12(b)(2), (3) AND (6)**<br><br>Case No. 2:14-cv-00867-JNP-BCW<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Kindig-It Design, Inc. ("Kindig") brings this action against defendants Creative Controls, Inc. ("Creative Controls"), Speedway Motors, Inc., and Rutter's Rod Shop, Inc., claiming, among other things, that Creative Controls has infringed on Kindig's copyrights and patents. Creative Controls moves to dismiss on the basis that the court lacks personal jurisdiction over it. Alternatively, Creative Controls moves to transfer the case to Michigan and to dismiss various causes of action under Rule 12(b)(6) for failing to state a claim. The court held a hearing on the motion on September 24, 2015. Due to inadequacies in the briefing, the court requested additional memoranda from both parties, which were filed on October 12, 2015.

Kindig has met its burden of showing that Creative Controls has sufficient contacts with Utah to allow the court to exercise personal jurisdiction over it on the non-patent claims. It has not, however, met its burden for the patent claims. And Kindig has only sufficiently stated a claim under Rule 12(b)(6) for some, but not all, of its claims. Accordingly, the court GRANTS IN PART AND DENIES IN PART Creative Controls' motion to dismiss. (Docket 31).

## FACTUAL BACKGROUND

In support of its motion to dismiss for lack of personal jurisdiction, Creative Controls offers an affidavit by its president detailing its lack of contacts with Utah. Creative Controls is a Michigan corporation. It has never maintained a regular or established place of business in Utah. It is not registered to do business in Utah, and has no employees in Utah. Creative Controls does not own any property in Utah. It also does not have any bank accounts in Utah. Kindig offers no evidence to contradict these assertions.

In arguing that this court has jurisdiction, Kindig points to four distinct "contacts" that Creative Controls allegedly has to Utah. First, Creative Controls maintained a website on which customers, including any from Utah, could place orders. Second, Creative Controls donated a custom parking brake for use on a car that Kindig was customizing. Third, Creative Controls made a single sale of a door handle to a Utah customer for $585. Fourth, Creative Controls allegedly copied photographs and contents from Kindig's Utah-based website.

Creative Controls' first alleged contact with Utah is the website it maintains. This website advertises Creative Controls' products and, at one time, allowed customers to place orders and make purchases. But there has been no evidence presented that the website specifically targets Utah customers. In fact, Creative Controls' president swears that it "does not systematically or otherwise target persons or firms as potential customers in the state of Utah for the sale of any products." Kindig offers no evidence to contradict this testimony.

2

Creative Controls' second alleged contact with Utah occurred approximately five years ago when Creative Controls donated to Kindig a custom parking brake for a car that Kindig was customizing. Creative Controls sent the brake to Kindig's place of business in Utah. In return, Kindig sent Creative Controls a disk containing photographs of the finished car. Accompanying the disk was a letter from Kindig indicating that Creative Controls could use the photographs for promotional purposes. The photographs on the disk are among the copyrighted photographs that Kindig alleges Creative Controls illegally copied.

Creative Controls' final alleged contact with Utah is a single sale made to a Utah customer. The customer, a Utah resident, placed an order on Creative Controls' website. The order was delivered to the customer's residence in Utah. However, the customer was a relative of a Kindig employee and Kindig admits that the order was made at its request in preparation for this litigation. At oral argument, the parties agreed that it would be improper to subject Creative Controls to personal jurisdiction on the basis of this contact.

## DISCUSSION

Creative Controls argues that this court lacks personal jurisdiction over it. Whether a court may exercise personal jurisdiction over a defendant depends on the defendant's contacts with the forum state. Those contacts may give rise to either general or specific personal jurisdiction. A party is subject to general personal jurisdiction only when its "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 755 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011)). In this case, the parties agree that Creative Controls' limited contacts with Utah are insufficient to give rise to general personal jurisdiction. Accordingly, the court's analysis is confined to specific personal jurisdiction.

Specific personal jurisdiction exists only when the plaintiff's claims arise out of the defendant's contacts with the forum. Thus, the court must consider *each* of Kindig's claims separately to determine whether they arise from any of Creative Controls' contacts with Utah. And because several of Kindig's claims are factually unrelated, the specific contacts alleged by Kindig may relate to some of Kindig's claims, but not to others. The patent infringement claims, for example, are factually unrelated to the copyright infringement claims. This means that the court may have specific personal jurisdiction over Creative Controls for some of the Kindig's claims, but not for others.

When a court has specific personal jurisdiction over only some of a plaintiff's claims, the doctrine of pendent personal jurisdiction may allow the court to exercise personal jurisdiction over the remaining claims. Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim . . . and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). But this doctrine is only applicable when the claims are sufficiently related. Accordingly, the final step in the jurisdictional analysis is to consider whether the court may exercise pendent personal jurisdiction over Creative Controls for any claim over which it lacks specific personal jurisdiction.

## I.    The Court May Exercise Specific Personal Jurisdiction Over Creative Controls for Only Some of Kindig's Claims

To determine whether the court has personal jurisdiction over Creative Controls, the court must first determine whether to apply Tenth Circuit or Federal Circuit law. Both circuits agree that where, as in Utah, "the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry." *Shrader v. Biddinger*, 633

F.3d 1235, 1239 (10th Cir. 2011); *see 3D Sys., Inc. v. Aarotech Labs. Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (explaining that the Federal Circuit defers "to the interpretation of a state's long-arm statute given by that state's highest court"); *Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999) (explaining that the Utah long arm statute extends to the fullest extent permitted by due process). Accordingly, the inquiry is whether Federal Circuit law or Tenth Circuit law governs the due process analysis.

On the patent-related claims, Federal Circuit law governs the due process analysis for personal jurisdiction purposes. *3D Sys.*, 160 F.3d at 1377 (explaining that for patent-related claims "when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies"). In contrast, on the non-patent-related claims, Tenth Circuit law controls. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (discussing when Federal Circuit law or regional circuit law applies to personal jurisdiction analysis). The following general principles, however, apply in both circuits.

Under both Federal Circuit and Tenth Circuit law, the plaintiff bears the initial burden of establishing personal jurisdiction. *See Shrader*, 633 F.3d at 1239 (explaining the burden); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003) (explaining the burden). But where, as here, a motion to dismiss is made with no request for an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (quoting *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008)); *Elecs. for Imaging*, 340 F.3d at 1349 (describing an identical standard under Federal Circuit law). "The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts

that if true would support jurisdiction over the defendant.'" *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1159 (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)); *Elecs. for Imaging*, 340 F.3d at 1349 (describing an identical standard under Federal Circuit law). Any factual disputes must be resolved in the plaintiff's favor. *Shrader*, 633 F.3d at 1239; *Graphic Controls Corp. v. Utah Med.Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998).

A.     The court lacks specific personal jurisdiction over Creative Controls on the patent-related claims.

Kindig argues that the court has personal jurisdiction over Creative Controls for the patent-related claims[1] because Creative Controls has an interactive website. It asserts that this website "clearly evidences [Creative Controls'] intent to do business in the State of Utah" and that the website constitutes an offer to sell in Utah. Creative Controls responds that it has made no sales to Utah residents, with the exception of the sale to a party related to Kindig, and that there is no evidence that any other Utah resident has ever viewed the website.

Under Federal Circuit law, when specific personal jurisdiction has been contested, the inquiry is "whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

---

[1] The patent-related claims in this case are claims 1, 2, 7, 12, 13 and 14. Claims 1, 2, 12, 13 and 14 are claims for patent infringement or inducement of infringement. While claim seven is for unfair competition under the Utah's Unfair Competition Act, it is still patent-related because, as argued in Kindig's reply, the alleged "material diminution in value of intellection property" is based on the patent claims.

As evidence of Creative Controls' purposefully directed activities related to the patent claims, Kindig points to Creative Controls' website.[2] In doing so, it relies heavily on the "sliding scale" framework outlined in a 1997 federal district court decision, *Zippo Mfg. Co. v. Zippo Dot Com*, *Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Under this framework, active websites, which facilitate internet transactions by the repeated and knowing transmission of files, nearly always establish the minimum contacts necessary for jurisdiction. *Id.* But "passive Web sites," which do little more than provide information, do not. *Id.* For "interactive Web sites," which fall in the middle of the scale, jurisdiction depends on the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* But the *Zippo* sliding scale framework has never been adopted by the Federal Circuit. In fact, there is considerable uncertainty in the Federal Circuit, as in many others, as to how internet contacts and websites should be treated when evaluating personal jurisdiction. *See, e.g.*, *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1138–42 (S.D. Fla. 2009) (citing numerous divergent cases across various circuits). Accordingly, the court must first determine whether to apply the *Zippo* sliding scale framework in this case.

       1)     The court finds the Zippo sliding scale to be unpersuasive.

The parties disagree on how Creative Controls' website should be classified for purposes of the *Zippo* sliding scale test. However, taking the allegations in the Supplemental and Second Amended Complaint (Docket 26) (the "Complaint") as true, it is clear that Creative Controls' website was "highly interactive." The website, at least until the lawsuit was filed, allowed users to place orders for products. It did more "than make information available to those who are

---

[2] This is the only contact that Creative Controls allegedly has with Utah that is related to the patent claims. Creative Controls' alleged copying of photographs from Kindig's website is unrelated to the patent claims, as is Creative Controls' alleged donation the parking brake. Furthermore, as explained below, the parties agree that the single sale made to a Utah resident should be ignored for the jurisdictional analysis.

interested in it." *Zippo*, 952 F. Supp. at 1124. Because the "defendant clearly [did] business over the internet," the website falls on the highly interactive "end of the spectrum." *Id.* Under *Zippo*, this court would have personal jurisdiction over Creative Controls based solely on the existence of its website. This would be the case even though Kindig has not pled any facts to suggest that any Utah resident *actually* viewed or interacted with Creative Controls' website, with the exception of the single sale made at Kindig's request, which both parties agree must be ignored for purposes of the jurisdictional analysis.[3] In fact, the unrefuted affidavit from Creative Controls' president indicates that Creative Controls "does not systematically or otherwise target persons or firms as potential customers in the state of Utah for the sale of any products."

The lack of any specific instances of Creative Controls' physical or digital contacts with Utah demonstrates why the *Zippo* sliding scale should not replace traditional personal jurisdiction analysis. Specifically, it highlights *Zippo*'s primary defect. The *Zippo* test effectively removes geographical limitations on personal jurisdiction over entities that have interactive websites. And because the number of entities that have interactive websites continues to grow exponentially, application of the *Zippo* framework would essentially eliminate the traditional geographic limitations on personal jurisdiction.

Under Kindig's view, every court in every state could exercise personal jurisdiction over Creative Controls simply because it maintains an interactive website. Were the court to adopt such an approach, "then the defense of personal jurisdiction, in the sense that a State has

---

[3] The stipulation of the parties at oral argument that the sale made at Kindig's request cannot be the basis for personal jurisdiction is consistent with the rulings of many courts that have considered whether a plaintiff may manufacture jurisdiction by orchestrating a sale in a particular forum. *See, e.g.*, *Mor-Dall Enters., Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 880 (W.D. Mich. 2014) (explaining that a plaintiff cannot manufacture jurisdiction by orchestrating a sale in a particular forum); *Krepps v. Reiner*, 588 F. Supp. 2d 471, 479 (S.D.N.Y. 2008) ("[P]laintiffs are not permitted to 'manufacture' personal jurisdiction over defendants by orchestrating an in-state web-based purchase of their goods."), *aff'd*, 337 F. App'x 65 (2d Cir. 2010); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998) ("Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes.").

geographically limited judicial power, would no longer exist." *ALS Scan, Inc. v. Dig. Serv.*
*Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). This is an "untenable result" that exposes
the primary flaw in the *Zippo* test. *Shrader*, 633 F.3d at 1240.

The weakness of the *Zippo* approach becomes ever more apparent in today's digital age.
The ability to create and maintain an interactive website is no longer the sole domain of
technologically sophisticated corporations. Virtually all websites, even those created with only
minimal expense, are now interactive in nature. It is an extraordinarily rare website that does not
allow users to do at least some of the following: place orders, share content, "like" content,
"retweet," submit feedback, contact representatives, send messages, "follow," receive
notifications, subscribe to content, or post comments. And those are only interactions
immediately visible to the user. In fact, most websites also interact with the user "behind the
scenes" through the use of "cookies." Thus, even a website that appears "passive" in nature may
actually be interacting with the user's data and custom-tailoring the content based on the user's
identity, demographics, browsing history, and personal preferences.[4] In addition, there is an ever-
increasing amount of internet contact that is done through the use of "mobile apps" that bypass
the traditional website altogether. This increase in mobile computing allows entirely new
interactions. These applications routinely send notifications, are location based, and share data
with other applications.

Furthermore, maintaining an interactive website is no longer the sole purview of
corporations. In fact, with the invention of social media, many individuals, to say nothing of
organizations, maintain an interactive website. In a matter of minutes, an individual can create a

---

[4] It is worth noting that many of these now-ubiquitous interactive features did not exist in 1997 when *Zippo* was
decided.

Facebook account and upload content to his or her own[5] "Facebook page." That page may allow all other Facebook users to interact with it.[6] It is difficult to envision a website that is more interactive than the average Facebook page. Indeed, a principal purpose of social media is to facilitate interactions between users. The level of interactivity on even the most basic Facebook page arguably exceeds that of even the most interactive website in 1997 when *Zippo* was decided.

Given the exponential growth in the number of interactive websites, the *Zippo* approach—which would remove personal jurisdiction's geographical limitations based on the mere existence of those those websites—is particularly troubling. And the problem would grow more acute every year as more individuals and businesses create interactive websites.

This court is not alone in its criticism of the *Zippo* sliding scale as a replacement for traditional personal jurisdiction analysis. The Second Circuit has cautioned that the *Zippo* sliding scale "does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ 6585(GEL), 2004 WL 964009, at *3 (S.D.N.Y. May 5, 2004)). Rather, "traditional statutory and constitutional principles remain the touchstone of the inquiry." *Id.* (quoting *Best Van Lines*, 2004 WL 964009, at *3); *see Roblor Mktg. Grp.*, 645 F. Supp. 2d at 1138–42 (citing cases and "shar[ing] in the criticism of over-reliance on the sliding scale").

---

[5] While it is true that individuals or organizations do not actually own or maintain the technological infrastructure of their Facebook pages, they do create and maintain most of the content. Accordingly, it would appear that the *Zippo* test would treat the individual or organization that created the page as maintaining a highly interactive website.

[6] The court recognizes that one possible way to distinguish the Facebook activities from the *Zippo* test is that *Zippo* referred to commercial activity and most individual social media pages are not maintained for commercial purposes. It is unclear, however, why this distinction should make any difference for purposes of personal jurisdiction. Nothing requires that the "purposeful availment of the forum" be for commercial purposes. Indeed, that "purposeful availment" is often for personal, recreational, or other non-commercial purposes.

The traditional tests are readily adaptable to the digital age, just as they were to technological advances like the telegraph, radio, television, and telephone. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510–11 (D.C. Cir. 2002) (explaining that "our traditional notions of personal jurisdiction" are adaptable to the internet context). Indeed, the telephone provides an apt analogy. Although a company may have a public telephone number that can be dialed from every state, it is not necessarily subject to personal jurisdiction in every state. Rather, personal jurisdiction rising from telephonic contacts can only be based on *actual* phone calls. Similarly, personal jurisdiction arising from an interactive website should only be based on *actual* use of the site by forum residents.

In summary, this court finds *Zippo* to be unpersuasive. The traditional tests for personal jurisdiction are readily applicable to internet-based conduct and are therefore controlling under Federal Circuit law.

> 2)      Creative Controls has not purposefully availed itself of the Utah forum via its website.

Under traditional personal jurisdiction analysis, the court must consider whether Creative Controls' website constitutes a purposeful availment of the Utah forum. By its very nature, the internet allows individuals and businesses to create a presence that is visible throughout the United States and the world. Even so, "one cannot purposefully avail oneself of 'some forum someplace.'" *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002). Rather, the defendant must have purposefully targeted its activities toward a particular forum, such that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In that sense, the availability of a website in any forum is similar to "stream of commerce cases" where the defendant distributes products into the national stream of commerce. As the Supreme Court explained, "[t]he placement of a product into the stream of commerce,

11

without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State . . . ." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987).

Specific personal jurisdiction may be based only on the defendant's contacts that give rise or relate to the claims at issue. Thus, the court focuses its inquiry on whether any contacts Creative Controls may have had with Utah via its website give rise or relate to a claim for patent infringement. A patent infringement claim arises when the alleged infringer "without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a) (2012). In this case, other than the single product sold at Kindig's request, there is no evidence that Creative Controls made or sold any allegedly infringing products in Utah.[7] Thus, specific personal jurisdiction can exist only if Creative Controls established contacts with Utah by offering to sell the allegedly infringing products to Utah residents.

For purposes of section 271, the Federal Circuit defines the term "offer to sell . . . according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000). An offer to sell occurs when a party has "communicated a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* at 1257 (quoting Restatement (Second) of Contracts § 24 (Am. Law Inst. 1979)).

In the context of patent infringement, the Federal Circuit has construed "offer to sell" broadly. For instance, it was an offer to sell where a defendant "provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts . . . ."

---

[7] The parties agree that the specific product sold at Kindig's request cannot be the basis for personal jurisdiction.

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (discussing the Federal Circuit's holding in *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998)). This was because the substance of the letters conveyed a "description of the allegedly infringing merchandise and the price at which it [could] be purchased." *Id.* (quoting *3D Sys.*, 160 F.3d at 1379). Nevertheless, a plaintiff must still present "relevant evidence to support its claim that [the defendant] offered to sell the accused [product] . . . ." *Id.* If there is no evidence that what would otherwise constitute an offer was actually communicated or "manifested" to the relevant party, the existence of an offer has not been demonstrated. As a federal district court in South Carolina explained:

> [T]here are no allegations that any South Carolina resident accessed Centricut's web page. Even assuming that the web site constitutes an offer to sell under the patent laws, Plaintiff makes no factual demonstration that Centricut's Internet "offers to sell" actually were made in South Carolina, by virtue of a consumer visiting the site. Without some other substantial act, the web page is not an offer to sell allegedly infringing products in South Carolina under 35 U.S.C. § 271(a).

*ESAB Grp., Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 333 (D.S.C. 1999) (footnote omitted); *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (recognizing requirement that "defendant intentionally interact with the forum state via the web site in order to show purposeful availment").

The Federal Circuit has indicated that one important factor for evaluating purposeful availment in the internet context is "whether any [forum] residents have ever actually used [the defendant's] website to transact business." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (vacating motion to dismiss for lack of personal jurisdiction on other grounds). In one case, for example, despite finding that the defendant's "websites contain[ed] some interactive features aimed at transacting business," the Federal Circuit stated that it did not have enough information to decide whether the websites alone

justified specific jurisdiction, in part because it was "unclear how frequently those features are utilized" or whether the site was accessed by forum residents. *Id.*

In this case, to establish that Creative Controls purposefully availed itself of the Utah forum, Kindig must show that Creative Controls either "intentionally targeted Utah users or that Utah users actually interacted with [the] website." *iAccess, Inc. v. WEBcard Techs., Inc.*, 182 F. Supp. 2d 1183, 1187 (D. Utah 2002). At the motion to dismiss stage, Kindig need only provide factual allegations that, taken as true, indicate that Creative Controls made an offer to sell to a resident of Utah other than in the sale orchestrated by Kindig. Even viewing all well-pleaded facts in the light most favorable to Kindig, it has not satisfied its minimal burden in this regard.

Kindig alleges that Creative Controls' website is "highly interactive" and that it encourages website viewers to purchase Kindig's products. Kindig also makes factual allegations suggesting that Creative Controls' website was, prior to the filing of this litigation, capable of facilitating commercial transactions. Critically, however, Kindig has failed to plead any facts that would suggest that Creative Controls either intentionally targeted Utah residents or has made any offers to sell the allegedly infringing products to Utah residents. In fact, the unrefuted affidavit from Creative Controls' president indicates that Creative Controls "does not systematically or otherwise target persons or firms as potential customers in the state of Utah for the sale of any products."

Likewise, Kindig has failed to plead any facts showing that any Utah resident (other than in connection with Kindig's orchestrated sale) has ever visited Creative Controls' website. Thus, even assuming that the website constitutes an offer to sell under Federal Circuit law, there is no evidence that Creative Controls has ever made an offer to sell an allegedly infringing product to a Utah resident via its website. Without such evidence, the court cannot find that Creative

Controls' website creates sufficient minimum contacts with Utah to constitute purposeful availment of the Utah forum. Accordingly, the court lacks specific personal jurisdiction over Creative Controls on all patent-related claims.

> B.   The court has personal jurisdiction over Creative Controls on all the non-patent claims related to the allegedly copied photographs.

Kindig asserts three bases for this court's specific personal jurisdiction over Creative Controls on the non-patent claims.[8] First, it again argues that the "interactive" nature of Creative Controls' website provides this court with personal jurisdiction under Tenth Circuit law. Second, it argues that Creative Controls copied the allegedly infringing photographs from Kindig's Utah website, and that this contact with the forum is sufficient for the court to exercise personal jurisdiction. Third, it argues that Creative Controls' previous donation of a parking brake and subsequent receipt of photographs provide the court with personal jurisdiction

Under Tenth Circuit law, to satisfy the requirements of specific personal jurisdiction, the plaintiff must show "that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities." *Emp'rs Mut. Cas.*, 618 F.3d at 1160 (internal quotation marks omitted) (citations omitted)). The purposeful availment requirement "ensures that a defendant will not be subject to the laws of a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *AST Sports Sci.*, 514 F.3d at 1056–57 (quoting *Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618, 625 (10th Cir. 1988)).

> 1)   Creative Controls' website does not constitute purposeful availment of the Utah forum.

---

[8] As explained above, Tenth Circuit law governs the question of this court's personal jurisdiction for claims unrelated to the patents.

Kindig argues that the "interactive" nature of Creative Controls' website provides this court with personal jurisdiction over the non-patent-related claims. In support of its arguments, it again relies on the *Zippo* "sliding scale" that has informed the analysis in some previous Tenth Circuit cases. *See, e.g.*, *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (referencing the "sliding scale" from *Zippo*). Kindig also references several previous cases from this court applying the same analysis. *See, e.g.*, *Del Sol, LC v. Caribongo, LLC*, No. 2:11CV573DAK, 2012 WL 530093, at *3 (D. Utah Feb. 17, 2012).

More recently, however, the Tenth Circuit has explained that it "has not taken a definitive position on the *Zippo* sliding-scale test." *Shrader*, 633 F.3d at 1242 n.5. Indeed, it has cautioned that a jurisdictional analysis that effectively removes traditional geographic limitations would be "untenable." *Id.* at 1240. Rather, "it is necessary to adapt the analysis of personal jurisdiction . . . by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Id.*

Accordingly, and for the same reasons as those articulated in the previous section, the court again finds *Zippo* to be unpersuasive. The court believes this conclusion is justified under Tenth Circuit law. Here again, the traditional test of minimum contacts and purposeful availment controls. Creative Controls has no more purposefully availed itself of the Utah forum by its website under Tenth Circuit law than under Federal Circuit law. Accordingly, the court cannot exercise personal jurisdiction over Creative Controls based solely on its website.

        2)      The illegal copying of photographs on Kindig's Utah website gives rise to personal jurisdiction over Creative Controls on all claims related to the alleged copying.

Kindig alleges that Creative Controls operates websites that contain copyrighted photographs illegally copied from Kindig's website. Kindig alleges that Creative Controls copied the photographs from Kindig's website and used them to illegally create infringing websites and

other derivative works. Kindig argues that Creative Controls purposefully availed itself of the Utah forum by illegally copying the materials from Kindig's website in Utah.

This allegation is in stark contrast to the *Zippo*-based arguments Kindig previously advanced. Namely, this is an allegation that there was an actual, not merely a possible, contact with the forum. The court agrees that, taking this allegation as true, Creative Controls' actions constitute a purposeful availment of the Utah forum. Creative Controls allegedly copied photographs from a Utah company's website and used the copied materials to creative derivative works. Given that contact, it is both foreseeable and reasonable that Creative Controls would be haled into a Utah court.

This court may exercise specific personal jurisdiction over Creative Controls for all claims arising out of that contact so long as doing so does not offend traditional notions of fair play and substantial justice. Accordingly, the court must determine which, if any, of Kindig's claims arise out of Creative Controls' contact with the Utah forum.

Kindig has fourteen causes of action against Creative Controls. Claims 1, 2, 7, 12, 13, and 14 are the patent-related claims. These claims are wholly unrelated to Creative Controls' alleged copying of Kindig's website. Claim 11 is for business disparagement based on statements made at a trade conference in Las Vegas, Nevada. That claim has is also unrelated to the allegedly copied photographs or to Utah. However, claims 3, 4, 5, 6, 8, 9, and 10 (collectively, the "Copyright-Related Claims") are for conversion, copyright infringement, Lanham act violations, fraud, deceptive trade practices and unjust enrichment. These Copyright-Related Claims all arise from Creative Controls' alleged copying of the photographs from Kindig's Utah website. Accordingly, the court concludes that they do arise out of the Creative Control's contact with Utah.

Having determined that the Copyright-Related Claims arise from Creative Control's contact with Utah, the court must still determine whether the exercise of personal jurisdiction over them is consistent with traditional notions of fair play and substantial justice. The relevant factors for the court to consider include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotation marks omitted) (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Creative Controls argues that "[i]t would be a significant burden on Creative Controls to have to defend the lawsuit in Utah while Creative Controls is located in Michigan." It does not, however, explain why this would the case. In the modern world of air transportation and digital communication, the court has no difficulty in finding that litigating in Utah will not create so substantial a burden to Creative Controls as to violate Due Process. Additionally, Utah has a strong interest in the resolution of this dispute. Utah has an interest in ensuring that the copyrights owned by its citizens are not illegally infringed. Similarly, Utah has an interest in the adjudication of the unfair trade practices claims. For all of these reasons, the exercise of specific personal jurisdiction over Creative Controls is consistent with Due Process and does not violate notions of fair play and substantial justice.

C.   The court cannot exercise pendent personal jurisdiction over Creative Controls for the claims over which no specific personal jurisdiction exists.

Having determined that the court has personal jurisdiction over Creative Controls for the Copyright-Related Claims, the final step in the jurisdictional analysis is to consider whether the court can exercise pendent personal jurisdiction over the remaining claims. The Tenth Circuit has

explained that "[p]endent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim . . . and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Botefuhr*, 309 F.3d at 1272. However, pendent personal jurisdiction may only be exercised if the second claim "arises out of the same nucleus of operative fact" as the first claim. *Id.* Even then, however, "a district court retains discretion." *Id.* at 1273.

In this case, there is no pendent personal jurisdiction. The patent claims and the claim for business disparagement are factually unrelated to the Copyright-Related Claims. Indeed, Kindig has not even suggested that Creative Controls' copying of the photographs relates in any way to the patent claims or the claim for business disparagement. Accordingly, the court finds that there is no pendent personal jurisdiction in this case. Even were that doctrine to potentially apply, the court would exercise its discretion and not retain the claims because they factually unrelated to the claims over which the court has specific personal jurisdiction.

## II.    Venue is Proper

Creative Controls briefly argues that, "for the same reasons that personal jurisdiction against Creative Controls is lacking, venue is also improper." It argues that it would be inconvenient for it, a Michigan company, to litigate the patent-related Claims in Utah.

As explained above, however, the court dismisses the patent-related claims but finds that there is specific personal jurisdiction over Creative Controls for the Copyright-Related Claims. Accordingly, venue is proper for the Copyright-Related Claims under 28 U.S.C. § 1391(a), (c)(2) (2012). Additionally, the court is unpersuaded that the Copyright-Related Claims should be transferred to a Michigan court under 28 U.S.C. § 1404 (2012). For the same reasons as set forth

in the previous section, the court finds that it is not unfair for Creative Controls to litigate the Copyright-Related Claims in Utah.

### III.   Kindig Has Stated a Claim Under Rule 12 For All Copyright-Related Claims Except for the Fraud Claim

Creative Controls' final argument is that Kindig's claims must be dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted. Having determined that the court's jurisdiction is limited to the Copyright-Related Claims, the court will only consider the Rule 12 motion to dismiss as it relates to those claims.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim, a court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. Of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)). However, a court will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a claim must be dismissed where the complaint does not contain sufficient facts to make the claim "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). Although plaintiff is not required to include detailed factual allegations, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and ultimately must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A.     Kindig has sufficiently plead its claims for copyright infringement.

Creative Controls argues that Kindig has failed to sufficiently plead its copyright infringement claims (claims 3 and 4). It argues that the claims are deficient in three ways. First, it argues that the claims do not sufficiently identify the copyrighted materials that Creative Controls has allegedly infringed. Second, it argues that the claims do not sufficiently identify which of Creative Controls' works infringe upon the copyrights. Third, Creative Controls asserts that some of the copyrights may be invalid on their face. Each of these arguments will be considered in turn.

1)  Kindig's Complaint sufficiently identifies the copyrighted materials in question.

Creative Controls argues that Kindig's Complaint does not adequately identify the copyrighted materials owned by Kindig. Specifically, it states that "[t]he Federal Rules of Civil Procedures [sic] provide a sample form of complaint for copyright infringement, and the form anticipates that the allegedly infringing work would be not only identified in the complaint but attached as an exhibit." Creative Controls, however, has pointed to no Tenth Circuit authority *requiring* that the copyrighted material be attached to a complaint.

Kindig's Complaint does provide a description of the copyrighted work in paragraphs 16 through 25. The description includes the copyright registration information as well as the date of first publication. Additionally, Kindig has attached the copyright registrations to the complaint. While the court agrees that attaching the actual copyrighted works to the complaint may have been helpful, Kindig's failure to do so does not merit dismissal. Kindig has provided enough information in the Complaint to meet Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief" and to provide Creative Controls with sufficient notice of the claims. Fed. R. Civ. P. 8(a)(2). Kindig is not required, at the pleading

stage of the proceedings, to attach all relevant documents to the Complaint. Furthermore, the court notes that the discovery process will easily provide Creative Controls with access to the specific copyrighted materials.

        2)    Kindig has sufficiently pled Creative Controls' alleged infringement.

Creative Controls' next argument is that "Kindig has not identified what works on Creative Controls' website and/or the eBay pages are allegedly infringing Kindig's works." Here again, Creative Controls has provided no Tenth Circuit authority for its assertion that the Complaint must precisely identify every infringing material to survive a motion to dismiss. Rather, it cites cases explaining that complaints must "give defendants fair notice of the claims against them and the grounds supporting the claims." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013) (quoting *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)).

The Complaint alleges that Creative Controls' website "contains photographs of customized automobiles which [sic] are nearly identical to [the copyrighted] photographs of customized automobiles found on the Kindig website." This allegation clearly provides notice for the basis of the copyright infringement claims—namely that Creative Controls website contains copies of copyrighted photographs of Kindig's customized cars. This statement easily meets Rule 8's requirements.

        3)    The court cannot conclude that the copyrights are invalid.

Creative Controls' final argument is that "at least some of the registrations may be invalid on their face." It argues that "this is difficult if not impossible for Creative Controls to determine since Kindig has not identified what the works actually are." As was explained above, Kindig has sufficiently identified the copyrighted works to survive a motion to dismiss. Creative Controls has not, at this stage, presented the court with sufficient argument to allow the court to conclude that any of the copyrights are invalid. If, however, through the discovery process,

Creative Controls concludes that specific copyrights are invalid, it may bring a motion for summary judgment.

      B.      **Kindig has sufficiently pled its claims for false advertising and deceptive trade practices.**

Creative Controls argues that Kindig's false advertising claim and deceptive trade practices claim (claims 5 and 6) should be dismissed because the photographs in question are not materially misleading. Specifically, it argues that "it is unlikely that any differences between door handles in the small photographs of cars and the actual Creative Controls' handles would influence any purchasing decision."[9] Thus, they are not capable of causing "confusion or . . . misunderstanding as to the source, sponsorship, approval, or certification of [the] goods." *Robert J. Debry & Assocs., P.C. v. Qwest Dex, Inc.*, 144 P.3d 1079, 1081 (Utah 2006) (quoting Utah Code § 13-11a-3(1)(b) (2006)).

Kindig need not show that its claims are "likely" in order to survive a motion to dismiss. Rather, it need only show that they are *plausible*. *See Twombly*, 550 U.S. at 570. Taking the allegations in the Complaint to be true, it is plausible that consumers would be influenced by the photographs of the customized cars. Indeed, the reasonable inference is that Creative Controls included the photographs of the unique customized cars with the very intent of influencing potential customers. Accordingly, the court rules that Kindig has sufficiently pled the false advertising and deceptive trade practices claims.

      C.      **At this stage of the proceeding, the court cannot dismiss Kindig's unjust enrichment or conversion claims as preempted.**

Creative Controls argues that Kindig's unjust enrichment and conversion claims (claims 8 and 10) are preempted by federal copyright law. In so doing, it relies on the Tenth Circuit case

---

[9] The court is puzzled by how Creative Controls can claim to be unable to determine which photographs form the basis of the copyright claims and yet allege that the images of the handles in those photographs are too small to influence any consumer.

of *Ehat v. Tanner.* 780 F.2d 876 (10th Cir. 1985). Both claims are based on Kindig's allegations that Creative Controls copied the photographs of cars that Kindig customized and that Creative Controls "passed off" those images as depicting their own customization of cars.

But Creative Controls has also argued that some of the copyrights may be invalid and discovery is required on this issue. Because both the unjust enrichment and conversion claims are based on all the photographs, including some that may not be validly copyrighted, the court cannot determine which claims, if any, are preempted. Accordingly, the court declines to rule on the preemption issues at this stage of the proceedings.

D.     Kindig has failed to state a claim for fraud

Kindig's claim for fraud (claim 9) is based on Creative Controls' alleged use of Kindig's work on Creative Controls' website. Kindig alleges that "Creative Controls' use of the false and/or misleading information to promote and sell the Silent Hand Smooth Door Handle product was deliberate and with the intent to deceive and mislead the public." But Kindig alleges no facts suggesting that Creative Controls defrauded Kindig. Accordingly, Kindig's claim appears to be that Creative Controls committed fraud on the public at large. Kindig has not, however, cited any case or statute suggesting that a private company may bring a "fraud on the public" claim when that company was not itself defrauded. Indeed, the case upon which Kindig relies makes clear that, under Utah law, the party bringing the claim for fraud must have acted in reliance on the fraud. *Fidelity Nat'l Title Ins. Co. v. Worthington*, 344 P.3d 156, 159 (Utah App. 2015) (explaining that an element of a fraud claim is that the complaining party relied upon the fraudulent misrepresentation). Because Kindig has failed to allege that it acted in reliance on the allegedly fraudulent photographs contained on Creative Controls' website, Kindig has failed to adequately state a claim for fraud.

## CONCLUSION

Kindig has not satisfied its burden to show that this court has personal jurisdiction over Creative Controls for all claims. Specifically, this court lacks personal jurisdiction over Creative Controls on claims 1, 2, 7, 11, 12, 13, and 14. While the court has specific personal jurisdiction over all the remaining claims, Kindig did not adequately plead claim 9 for fraud. Accordingly, Creative Controls' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART and claims 1, 2, 7, 9, 11, 12, 13, and 14 are dismissed.

Signed January 20, 2016.

BY THE COURT

Jill N. Parrish
United States District Court Judge